In re Frances Michael **FITZGERALD,** Debtor.

**Frances Michael Fitzgerald, Appellant,**

v.

**Ninn Worx Sr, Inc.; Jerry Namba, Trustee; The John Leldon Gray Trust, Appellees.**

**BAP No. CC–09–1314–MoPaB.**

**Bankruptcy No. ND 09–12110–RR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 19, 2010.

Filed April 15, 2010.

---

Frances Michael Fitzgerald, Nipomo, CA, Pro se.

William Charles Beall, Beall & Burkhardt, Santa Barbara, CA, for appellee Jerry Namba.

Peter Garrell, Peter Sisi, Liner Grode Stein Yankelevitz, Los Angeles, CA, for appellant John Leldon Gray Trust.

Before MONTALI, PAPPAS and BRANDT,[1] Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

In this decision we revisit the heightened duty of a bankruptcy court to make an independent analysis and evaluation in the all too familiar situation of a trustee in bankruptcy selling to a defendant the estate's causes of action against that defendant. Our conclusion that such an analysis and evaluation should have been made in this case is bolstered by recent United States Supreme Court precedent reminding bankruptcy judges of their duty to make the inquiry regardless of the manner in which the parties have presented them with the question.

Debtor–Appellant, Frances Michael Fitzgerald ("Fitzgerald") appeals an order of the bankruptcy court authorizing the chapter 7[2] trustee-Appellee's ("Trustee") sale of certain assets of Fitzgerald's estate to Appellee, the John Leldon Gray Trust (the "Trust," collectively with Trustee, "Appellees"). For the foregoing reasons, we REVERSE the sale order.[3]

## I. BACKGROUND

### A. Prepetition Background.

Fitzgerald, a/k/a Michael Ninn, formed N Worx Media, Inc. ("NWM"), a company that owned and distributed adult films directed, edited, and produced by Fitzgerald. In June 2007, John Gray ("Gray"), as trustee of the Trust, approached Fitzgerald with a proposal to create a new corporation that would market and distribute Fitzgerald's library of films, and finance the production of future adult films. One month later, Fitzgerald and the Trust formed Ninn Worx SR, Inc. ("NWSR"), with Fitzgerald contributing to NWSR his 100% interest in NWM in exchange for $1,000 and a 49% interest in NWSR. The Trust owned the remaining 51% interest. Fitzgerald was appointed chief executive officer of NWSR, and continued to work as a film director.

The collaboration was short-lived. Fitzgerald was relieved of his duties as chief executive officer of NWSR on or around May 30, 2008. Relations between Fitzgerald and Gray further deteriorated and in August, 2008, NWSR sued Fitzgerald in Los Angeles County Superior Court for breach of fiduciary duty, tortious interference, and violation of the California Business and Professions Code ("State Court Action"). Fitzgerald filed a cross-complaint against NWSR, Gray, the Trust, and other third parties. NWSR demurred. Fitzgerald responded by filing an amended cross-complaint alleging ten causes of action, praying for damages of at least $1 million for each claim. NWSR again de-

---

1. Hon. Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the

Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

3. We GRANT Appellees' Request for Judicial Notice filed concurrently with their response brief and excerpts of record.

murred. On February 25, 2009, the state court sustained the demurrer to eight of Fitzgerald's causes of action, granting him leave to amend all eight, and overruled the demurrer with respect to two causes of action: conversion and accounting. On or around March 17, 2009, Tim Riley ("Riley"), new counsel for Fitzgerald in the State Court Action, filed a second amended cross-complaint alleging various cross-claims (the "Cross–Claims") to which NWSR filed a demurrer and a motion to strike.

## B. Postpetition Background.

Assisted by bankruptcy attorney Elva Wallace ("Wallace"), Fitzgerald filed a chapter 7 petition on June 2, 2009. He did not list the Cross–Claims in his schedules, and valued his 49% interest in NWSR at $0.00. The section 341 meeting of creditors was scheduled for July 27, 2009. On June 22, 2009, NWSR filed in state court a Notice of Stay of Proceedings due to Fitzgerald's bankruptcy filing.

On July 13, 2009, Fitzgerald moved to dismiss his bankruptcy case so he could continue to negotiate a settlement of the State Court Action.[4] After some docketing and other procedural errors, Wallace eventually set Fitzgerald's dismissal motion for hearing on September 8, 2009.

On August 25, 2009, NWSR and Trustee filed their combined opposition to Fitzgerald's motion to dismiss, opposing it on both substantive and procedural grounds. Substantively, the opposition noted that an asset sale to Gray (as trustee of the Trust) was in the works, which would bring to the estate approximately $60,000 to pay unsecured claims that totaled just over $40,000.

On August 28, 2009, Trustee filed an ex parte motion requesting a continuance of the September 8 dismissal hearing because he was unable to attend, and because he opposed dismissal prior to the pending asset sale, which he expected to occur sometime around September 28, 2009. For reasons unknown, the bankruptcy court did not act on Trustee's continuance motion, and the hearing went as Wallace had scheduled on September 8. The only party to appear at the hearing was NWSR, through counsel. On September 11, 2009, the bankruptcy court entered an order denying Fitzgerald's motion to dismiss for his failure to serve all creditors.

On August 31, 2009, Trustee filed and served a motion to sell to the Trust (1) Fitzgerald's 49% interest in NWSR, and (2) Fitzgerald's Cross–Claims "for up to $60,000" ("Sale Motion"). The $60,000 figure was the aggregate of filed, unsecured claims of approximately $40,000, plus expected administrative fees and expenses.

Trustee asserted that the proposed sale was in the best interest of the estate because, based on the sale price and the amount of unsecured claims, unsecured creditors would likely be paid in full. He further asserted the proposed sale was fair and reasonable considering that Fitzgerald's 49% interest (which Fitzgerald valued at $0.00) had no value to anyone other than the Trust because distributions to NWSR shareholders were subordinate to its $2 million debt, which, under its current financial situation, was unlikely to be paid in the foreseeable future. With respect to the Cross–Claims, Trustee offered no analysis regarding their value or the costs of litigation, but stated that the sale obviated the need for Trustee to prosecute and defend them. Finally, although Trustee

---

4. Fitzgerald filed an amended motion to dismiss his chapter 7 case two days later, reflect- ing some minor language changes.

asserted in the Sale Motion that the proposed sale was entered into in good faith, he did not seek a "good faith" finding under section 363(m) or present any evidence of the Trust's good faith.[5] Trustee set the sale hearing for September 23, 2009.

Just two days prior to the sale hearing, Fitzgerald filed an amended schedule B, which changed the value of his 49% interest in NWSR from $0.00 to $5.5 million and, for the first time, identified an interest in 137 films with a value of $1.5 million. Again, Fitzgerald did not list the Cross-Claims. He also filed an amended schedule F, which now indicated that unsecured claims totaled $784,366.87.[6]

### 1. The Sale Hearing.

The sale hearing went forward on September 23, 2009. No written opposition was filed but Wallace and Riley, appearing for Fitzgerald and his life partner, Suzette Rowe ("Rowe"), attempted orally to oppose it.

Initially, the bankruptcy court granted the Sale Motion because Fitzgerald failed to file any written opposition, and Local Bankruptcy Rule 9013–1(h) of the Central District of California deems such silence as consent. In response, Wallace stated that Fitzgerald favored the sale if Trustee were selling the assets for "full value," but she needed a two-week continuance to file an opposition, which she failed to file previously because she was out of town. Wallace further stated that on September 22, 2009, she filed two unsecured claims against the estate, one for $550,000 on behalf of Rowe's mother, who had lent Fitzgerald money for a home, and one for $192,000 on behalf of Riley, for his attorneys fees incurred to date in the State Court Action. The court denied Wallace's request, noting that she had received sufficient notice to file an opposition, and it again granted the Sale Motion.

Riley then stated that on September 14, he had drafted a reply to NWSR's and Trustee's combined opposition to Fitzgerald's dismissal motion for Wallace to file.[7] The court replied that it never received Riley's brief. Riley explained that he opposed the $60,000 sale price as a "travesty" considering the relationship between Gray and Fitzgerald and the fact that the Trust was improperly buying its way out of the State Court Action, a matter in which Riley had invested $192,000. He then requested a 30–day continuance to file an opposition, which the court denied.

It then came to the court's attention, and Trustee's surprise, that Rowe wished to overbid, which the court decided to allow. After a brief recess to discuss the bidding procedure, Trustee informed the court that claims against Fitzgerald's estate totaled around $40,000, but he had learned during the recess that both bid-

5. Section 363(m) provides:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in *good faith*, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal (emphasis added).

6. The amended schedule F was referred to at the sale hearing, but it was not before the bankruptcy court. It is not part of the record on appeal.

7. Wallace filed Riley's reply brief on September 21, just two days before the sale hearing, but did not provide a copy of it to the bankruptcy court. Riley's brief, and supporting declaration, focused primarily on supporting the dismissal of Fitzgerald's chapter 7 case, but also objected to the proposed sale of assets to the Trust for $60,000.

ding parties asserted respective claims that would increase the claims universe to "$1 million and so forth." Trustee then stated, "[b]ut it seems to be somewhat equal on either side, so I don't think it's going to impact this bid," and recommended that bidding proceed.[8] The auction commenced, with Rowe's top bid of $95,000 losing to the Trust's bid of $100,000.

Riley then interjected, contending that the parties had agreed during the recess that Rowe's offer would be considered a better offer than the Trust's since Riley was willing to compromise his $192,000 claim for fees, and Rowe's mother would also compromise her $550,000 claim. He also asserted that Gray's threatened claim of $1 million was a fraud. Riley then asked for a continuance, but alternatively offered an additional $5,000 of his own funds to Rowe's bid. The court replied that Riley did not have the funds on his person, and instructed him to sit down.

Counsel for the Trust then informed the court, which Trustee confirmed, that neither Fitzgerald nor Wallace appeared at the section 341 meeting of creditors on July 27, 2009, or at the continued meeting on September 21, 2009, and, had they done so, perhaps Fitzgerald could have informed Trustee about his opinion on the assets' actual value. Wallace responded that they did not attend the first meeting because they believed Fitzgerald's bankruptcy case would be dismissed. As for the September 21 meeting, Wallace acknowledged receiving Trustee's notice continuing it to September 21, but contended there was some confusion about it because the docket indicated the meeting was actually held on August 21.[9] Trustee informed the court that the section 341 meeting occurred on September 21. Upon hearing this, the court swiftly confirmed the sale for $100,000 to purchaser, the Trust.

On October 8, 2009, the bankruptcy court entered an order granting Trustee's Sale Motion ("Sale Order"). Although not prayed for or determined at the sale hearing, the Sale Order found the Trust to be a "good faith" purchaser pursuant to section 363(m). Fitzgerald did not file any motions under Fed.R.Civ.P. 59 or 60, incorporated by Rule 9023 and Rule 9024, in response to the Sale Order, or seek a stay of the sale. Fitzgerald filed a premature notice of appeal on October 2, 2009, followed by a timely amended notice of appeal on October 13, 2009.

### 2. Post–Sale Events.

The sale closed on October 21, 2009. Trustee received $100,000, which has been deposited into his trust account. Six days later, the Trust sold the 49% interest in NWSR.

On November 12, 2009, the state court granted the Trust and Trustee's request to dismiss Fitzgerald's Cross–Claims with prejudice. On November 18, 2009, NWSR served Fitzgerald and Riley with the Notice of Entry of Dismissal. No party

---

8. While not completely clear from Trustee's statement, from the colloquy that followed and statements made to us at oral argument, we take this to mean that if Rowe were the successful bidder, her mother's and Riley's claims would be withdrawn; if the Trust were successful, its $1 million claim would not share in the sales proceeds.

9. Fitzgerald contends on appeal that he did not receive notice of section 341 meetings of creditors that took place on August 21 and August 26, 2009. Although the August 21 docket entry seems to suggest this, careful examination of the document filed reveals that no meetings of creditors took place on either of those dates. Further, Trustee confirmed at the sale hearing that no such meetings occurred.

lodged any objections or sought any other form of relief.

## II. JURISDICTION

■ The bankruptcy court had jurisdiction under 28 U.S.C. § 157. We address below our jurisdiction over the appeal under 28 U.S.C. § 158.[10]

## III. ISSUES

1. Is the appeal moot?

2. Did Fitzgerald preserve his objection to the Sale Order?

3. Did the bankruptcy court abuse its discretion by issuing the Sale Order?

## IV. STANDARD OF REVIEW

■ Sales under section 363 are reviewed for abuse of discretion. *Simantob v. Claims Prosecutor, LLC. (In re Lahijani)*, 325 B.R. 282, 287 (9th Cir. BAP 2005).

## V. DISCUSSION

### A. Jurisdiction Over The Appeal.

■ Appellees contend the appeal is moot because: (1) it was not stayed pending appeal; (2) the sale was conducted in good faith under section 363(m); (3) the Cross–Claims have been dismissed with prejudice; and (4) the Trust has sold the 49% interest in NWSR for value to a third party. As the party advocating mootness, Appellees have the burden of establishing its application. *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir.2007).

### 1. No Stay Order.

Appellees argue that Fitzgerald's failure to obtain a stay of the Sale Order renders his appeal moot. Fitzgerald concedes that he did not obtain a stay, as allowed by Rule 8005. We disagree with Appellees.

■ Even though an appeal from an order approving a sale is moot if the sale has not been stayed and is consummated, there are several exceptions. *Sw. Prods., Inc. v. Durkin (In re Sw. Prods.)*, 144 B.R. 100, 102–03 (9th Cir. BAP 1992). One exception to the mootness rule is for appeals questioning whether the purchaser purchased the property in good faith. *Id.*; *see also* 11 U.S.C. § 363(m).

■ Because, as we explain below, there was no evidence in the record to support a good faith finding under section 363(m), the appeal is not moot for Fitzgerald's failure to obtain a stay.

### 2. Statutory Mootness Under Section 363(m).

■ While a finding of "good faith" is not an essential element for approval of a sale under section 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir.BAP2002).

■ Appellees contend that there is "substantial evidence" to support the "good faith" determination. We disagree. On the contrary, we see absolutely no evidence in the record to support a "good faith" finding under section 363(m). While

**10.** Fitzgerald's standing would initially appear to be an issue since this is a chapter 7 case. We have an independent duty to examine jurisdiction, and we lack jurisdiction over the appeal if Fitzgerald lacks standing. *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir.1997).

The bankruptcy court noted that perhaps this is a surplus estate, which could provide Fitzgerald standing because of his pecuniary interest. *Nangle v. Surratt–States (In re Nangle)*, 288 B.R. 213, 216 (8th Cir. BAP 2003). Appellees do not contest this issue, and therefore we assume it to be the case.

**881**

Trustee noted in the Sale Motion that the sale was entered into in good faith, Trustee did not request such a finding in the Sale Motion, nor did the Trust submit a declaration or any other evidence supporting this fact. Further, at the sale hearing, neither Trustee nor the Trust presented any evidence of the Trust's good faith or requested any such finding, nor did the bankruptcy court make any such determination.

▆▆▆ The boilerplate "good faith" finding in the Sale Order does not suffice under section 363(m), and the bankruptcy court should not have signed such an order without an evidentiary foundation. *T.C. Investors v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 752 (9th Cir. BAP 2003). "Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m)." *Thomas*, 287 B.R. at 785.

Accordingly, without a proper "good faith" finding under section 363(m), there is no safe harbor to shield the Sale Order from appellate review and appellate remedies. *M Capital Corp.*, 290 B.R. at 752.

### 3. Equitable Mootness.

▆▆▆ Even though Fitzgerald's appeal is not statutorily moot under section 363(m), his appeal may still be moot under the general principles of mootness. *Suter*, 504 F.3d at 987. As Appellees note, the sale has closed and the 49% interest in NWSR has been sold to a third party for value.

▆▆▆ Although an appeal is moot if the appellate court is unable to grant any relief whatsoever, the appeal is not equitably moot if the appellate court can fashion effective relief. *Spirtos v. Moreno (In re Spirtos)*, 992 F.2d 1004, 1006 (9th Cir. 1993).

▆▆▆ As for the Cross–Claims, "[w]here the asset 'sold' without a stay is a lawsuit and 'disposal' of the asset is a dismissal, the appropriate inquiry is whether the dismissal of the lawsuit could be undone." *Suter*, 504 F.3d at 987. In *Suter*, defendant law firm purchased estate's interest in plaintiff-debtors' legal malpractice claim at a bankruptcy court auction. After the sale, the law firm entered into a stipulation with the bankruptcy trustee to dismiss the malpractice case pending before the Nevada Supreme Court. The debtors appealed the sale order to the district court, and the law firm moved to dismiss for mootness because the malpractice case had been dismissed. The district court agreed, and granted the law firm's motion. Debtors appealed. The Ninth Circuit reversed. It determined that the district court presumed erroneously the debtors' appeal was moot because their interest in the malpractice case was extinguished due to its dismissal. "Without affirmatively demonstrating that the [debtors] have no recourse under Nevada law were they successful in the district court on their appeal of the bankruptcy court's decision to approve the compromise, mootness is not established." *Id.* at 986.

▆▆▆ Only Fitzgerald's Cross–Claims have been dismissed; the plaintiffs' claims against Fitzgerald are presumably still pending, subject to the stay of proceedings. All Appellees argue on appeal is that the Cross–Claims have been dismissed with prejudice. They have not met their burden under *Suter* to demonstrate affirmatively that Fitzgerald's Cross–Claims could not be revived. As such, although we offer no opinion on this, Fitzgerald or Trustee may have some effective relief under California law as to the Cross–Claims.

▆▆▆ As for the subsequent sale of the 49% interest in NWSR, sale to a third

party is a classic example of mootness in the bankruptcy context because it precludes meaningful relief. *Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1351 (9th Cir.1994). Here, the first sale was to insider the Trust—not a third party. Appellees confirm that six days later "the Trust sold the 49% interest in NWSR to a third party purchaser for value." What Appellees fail to reveal in their brief, as well at oral argument, is the identity of this third party, its relationship, if any, with Gray or the Trust, or the amount paid. The absence of any specifics from Appellees about this second sale purchaser makes us question whether relief cannot be afforded. Again, Appellees have not shown that Fitzgerald or Trustee have no recourse.

Accordingly, on this record, we are unable to determine conclusively the mootness of this appeal. Having established our jurisdiction, and concluding that we face no impediment to review the Sale Order, we turn to its merits.

**B. Fitzgerald Preserved His Objection To The Sale Order.**

■ Appellees contend that Fitzgerald's failure to file an opposition to the Sale Motion means that he consented to the sale and waived any right to object to it on appeal. We reject this argument. Fitzgerald clearly objected at the sale hearing, and the bankruptcy court considered his objections. Therefore, despite the procedural anomalies, Fitzgerald did not consent to the sale or waive his right to object to it on appeal.

We acknowledge that some of Fitzgerald's arguments against a sale ring hollow given Rowe's active participation in the bidding. We are satisfied, however, that the crux of Fitzgerald's complaint is the sale of the Cross–Claims without a proper examination of their worth, not the sale of his 49% interest in NWSR. The Cross–Claims would have remained available for prosecution had Rowe acquired them and, as we explain below, it is the sale of those claims to one of the defendants that Fitzgerald repeatedly challenged.

**C. The Bankruptcy Court Abused Its Discretion By Issuing The Sale Order.[11]**

**1. Good Faith.**

Fitzgerald, who appears pro se on appeal, contends that based on the volatile history between Gray and him, the bankruptcy court erred when it found the Trust to be a "good faith" purchaser under section 363(m) in the Sale Order.

■ The first requirement of a "good faith" purchaser is that there be an identifiable purchaser. *Ferrari N. Am., Inc. v. Sims (In re R.B.B., Inc.)*, 211 F.3d 475, 478–80 (9th Cir.2000). Secondly, generally the purchaser gives "value." *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir.1992).

Fitzgerald spends much time in his briefs alleging conspiracy, fraud, and collusion between Trustee and the Trust re-

---

11. Fitzgerald contends he did not receive sufficient notice of the Sale Motion. Our review of the docket shows to the contrary. Local Bankruptcy Rule 9013–1(d) for the Central District of California dictates that such motions require notice of at least 21 days. Trustee's proof of service indicates that the Sale Motion and supporting papers were served on August 28, 2009; the docket reflects that Trustee's papers were filed on August 31, 2009. Wallace presumably received notice sometime on or around August 29, or, at minimum, she received electronic notice of the filing on August 31. The sale hearing was set for September 23, 2009. Either way, Fitzgerald received sufficient notice. Plus, Fitzgerald, Riley and Rowe appeared at the sale hearing and Rowe bid.

garding the asset sale, in particular with respect to the Cross–Claims that he contends could be worth millions of dollars. He questions the propriety of even selling the Cross–Claims to the defendant in the lawsuit. Leaving aside the conspiracy allegation, Fitzgerald did raise this "value" issue, to an extent, at the sale hearing. Riley explained to the bankruptcy court that selling the Cross–Claims for $60,000 was a travesty, especially considering the relationship between Gray and Fitzgerald and the money invested in the State Court Action to date. At oral argument before us, Fitzgerald asserted that Trustee failed to investigate what the Cross–Claims might be worth. Neither Appellee offered us any helpful information to the contrary.

■ As to the propriety of selling the Cross–Claims, no one disputes that Gray or the Trust bought them with the intention to buy their way out of the State Court Action. However, causes of action that exist independent of the bankruptcy can be, and often are, sold by bankruptcy trustees under section 363(b). *Lahijani*, 325 B.R. at 288; 11 U.S.C. § 541(a)(1). Therefore, the Trust was a perfectly legitimate buyer.

Regarding the Cross–Claims' value, Fitzgerald offered no competent evidence prior to or at the sale hearing to show that the market value of the assets was something other than $100,000. Fitzgerald never disclosed the Cross–Claims in his schedules and, up until two days before the sale hearing, Fitzgerald considered the value of his 49% interest in NWSR at $0.00. Wallace stated at the sale hearing that Fitzgerald had no objection to the sale if the assets were being sold for "full value," but she failed to state what the "full value" was. Riley, other than contending that the sale was a "travesty," also failed to assert what he thought was the proper market value of the Cross–Claims.

■ Nonetheless, despite Fitzgerald's lack of contrary evidence, his argument does have some merit. The price achieved by an auction is ordinarily assumed to approximate market value when there is competition by an appropriate number of bidders. *Lahijani*, 325 B.R. at 289. However, when competition is constrained, the price is less likely to be reliable and should be examined more carefully. *Id.* The sale of a cause of action to a defendant in circumstances in which the plaintiff is the only competition is an example of constrained competition that warrants more scrutiny. *Id.*

■ Here, the bidders were a cross-defendant, the Trust (which apparently was acting in the interest of all fellow cross-defendants including Gray and NWSR), and cross-plaintiff's life partner Rowe. Thus, due to the nature of the parties involved, the $60,000 sale price calls for a higher level of scrutiny, and Trustee bore the burden to examine it more carefully. *Id.*

In the Sale Motion, Trustee offered a satisfactory analysis on the value for the 49% interest in NWSR, asserting that based on Fitzgerald's value of $0.00, and due to the nature of the asset, it had no meaningful market value. Therefore, presumably, the $60,000 sale price was driven primarily by the value of the Cross–Claims. Other than Trustee's contention that selling the Cross–Claims would obviate the estate's need to prosecute them, thereby reducing administrative expenses, and his declaratory statement that he "reviewed the docket and certain key pleadings in the [State Court Action]," Trustee offered no analysis whatsoever regarding the value of the Cross–Claims or why, in his business judgment, $60,000 was a fair and reasonable price. This clearly falls

short of what is required of a bankruptcy trustee under *Lahijani.*

Once faced with opposition to the sale, the bankruptcy court had the ultimate responsibility to assure that optimal value was being realized by the estate. *Id.* at 288–89. The debtor in a solvent estate is a beneficiary of the trust administered by a bankruptcy trustee, and it is not enough for Trustee to have stopped his inquiry when he determined that the sale price was adequate as long as it covered administrative expenses and the claims of non-insider creditors. Because of this failure, and the reasons discussed below, we must reverse the Sale Order.

### 2. Compromise Under Rule 9019.

■■■ While not raised precisely by Fitzgerald on appeal, we have the discretion, if not the obligation, to ensure that bankruptcy law is properly applied. *United Student Aid Funds, Inc. v. Espinosa,* No. 08–1134, 2010 WL 1027825, at *9, n. 14, 15 (U.S. Mar.23, 2010).[12] The sale at issue here was both a sale under section 363 and a compromise under Rule 9019. The bankruptcy court erred when it issued the Sale Order without performing the analysis required by the case law regarding compromises under Rule 9019.

In *Lahijani,* we determined that when a sale amounts to an acquisition of causes of action by a defendant, it must also be analyzed as a compromise for which the court has an independent duty to determine whether it is "fair and equitable." 325 B.R. at 290. Notably, in *Lahijani* a cause of action was being sold to a defendant over the objection of creditors. Here, the objector is the debtor. However-

er, as noted previously, if Fitzgerald's is a surplus estate, then he could have an interest in the settlement funds. Further, Riley, who is a creditor, made his objection known at the sale hearing. Therefore, *Lahijani* applies.

■■■ The fair and equitable settlement standard under Rule 9019 requires consideration of: (1) probability of success in the litigation; (2) collectability; (3) complexity, expense, inconvenience, and delay attendant to continued litigation; and (4) the interests of creditors, which are said to be "paramount." *Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1381 (9th Cir. 1986). These four factors are often referred to as the "*A & C* factors." Trustee did not set forth any of the *A & C* factors in the Sale Motion or his supporting declaration, nor did he request that the court address any such factors at the sale hearing. Confronted by what was actually, in part, a motion to approve a compromise under Rule 9019, the bankruptcy court made no findings on any of the four *A & C* factors at the sale hearing or in the Sale Order.

By not applying the fair and equitable settlement standards, the *A & C* factors, the bankruptcy court applied an incorrect legal standard and thereby abused its discretion. *Lahijani,* 325 B.R. at 287. Consequently, we REVERSE the Sale Order.

### VI. CONCLUSION

Based on the foregoing reasons, we REVERSE.[13]

---

12. We acknowledge that *Espinosa* instructs that bankruptcy courts have a duty to ensure compliance with statutory directives; although we see no reason why the same admonition should not apply to case-developed in-

structions, we need not resolve that question in this case.

13. Appellees filed a Motion to Strike Portions of Appellant's Excerpts of Record and a Mo-

tion to strike Port ions of Appellant's Declaration. These motions will be disposed of by a separate order entered concurrently with this Opinion.