# FILED

**NOT FOR PUBLICATION**

FEB 22 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                )   BAP Nos.   NC-14-1440-KuWJu
                                       )              NC-14-1515-KuWJu
THE ZUERCHER TRUST OF 1999,            )
                                       )   Bk. No.   12-32747
                Debtor.                )
_____)
THE ZUERCHER TRUST OF 1999;            )
MONICA HUJAZI,                         )
                                       )
                Appellants,            )
                                       )
v.                                     )   **MEMORANDUM**[*]
                                       )
E. LYNN SCHOENMANN, Chapter 7          )
Trustee,                               )
                                       )
                Appellee,              )
_____)

Argued and Submitted on January 21, 2016
at San Francisco, California

Filed – February 22, 2016

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:     Bradley Kass of Kass & Kass Law Offices argued for
                 appellants the Zuercher Trust of 1999 and Monica
                 Hujazi; Thomas F. Koegel of Crowell & Moring LLP
                 argued for appellee E. Lynn Schoenmann, chapter 7
                 trustee.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before: KURTZ, WANSLEE[**] and JURY, Bankruptcy Judges.

## INTRODUCTION

These appeals arise from the bankruptcy sale of a two-story mixed-use residential and retail building located on Bayshore Boulevard in San Francisco, California. Over the course of two years, the chapter 11[1] trustee and his successor, the chapter 7 trustee, strove to sell the Bayshore property. At each step of the sale process, the debtor the Zuercher Trust and its principal Monica Hujazi opposed the trustees' sales efforts. At bottom, this opposition appears to have been motivated in large part by their belief that the trustees' sales efforts were not going to realize the optimal value for the property. Tellingly, however, during the months the marketing and sale of the property was pending, no one ever expressed a sustained willingness and ability to buy the property in accordance with the proposed sale terms for an amount significantly more than that offered by the purchaser of the property.

The bankruptcy court made an explicit finding at the time it approved the sale of the property that the purchaser Rasmi Zeidan was a good faith purchaser within the meaning of § 363(m), and on appeal the Zuercher Trust and Hujazi have challenged that finding. Nothing in the record at the time the good faith

[**]Hon. Madeleine C. Wanslee, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

finding was made persuades us that this good faith finding was clearly erroneous. Even so, our prior BAP precedent indicates that, when any new facts come to light after the sale is completed plausibly calling into question the good faith of the buyer, the bankruptcy estate and the purchaser only can enjoy the benefit of § 363(m)'s limitation on appellate remedies when the bankruptcy court has duly considered those additional facts and has effectively determined the good faith of the purchaser in light of the additional facts.

While we may remand when such new facts come to light while the appeal is pending, so the bankruptcy court can consider them, doing so here would not be an efficient or effective means of resolving these appeals. These appeals are fully briefed and have been orally argued; the more efficient and effective path is for us to consider and resolve the merits of these appeals as presented to us by the parties.

Here, the bankruptcy court found, over the Zuercher Trust's and Hujazi's objections, that the chapter 11 trustee had obtained the optimal price for the Bayshore property by selling it to Zeidan for $3,050,000 and that the sale was in the best interests of the Zuercher Trust bankruptcy estate. On the record before us, the bankruptcy court's findings regarding the sale of the Bayshore property were not clearly erroneous. Accordingly, we AFFIRM.

**FACTS**

We have some familiarity with the Zuercher Trust bankruptcy case as a result of a prior appeal, Zuercher Trust of 1999 v. Kravitz (In re Zuercher Trust of 1999), 2014 WL 7191348 (Mem.

3

Dec.) (9th Cir. BAP Dec. 17, 2014). As we explained there, the Zuercher Trust was owned and controlled by Monica Hujazi and was formed as a business trust to own, develop and manage California real estate. Hujazi commenced a chapter 11 bankruptcy case on behalf of the Zuercher Trust in September 2012 because a foreclosure sale of some of the trust's real property was imminent. The bankruptcy court ordered the appointment of a chapter 11 trustee in January 2013.

After investigating the condition and financial status of the Bayshore property, the chapter 11 trustee determined that the Bayshore property needed to be sold because it was not generating sufficient revenue to fully service the secured debt encumbering the property and pay expenses and operating costs associated with the property.[2]

Accordingly, during the Spring of 2013, the chapter 11 trustee engaged in negotiations with RTC-Equity LLC and subsequently filed a motion in July 2013 seeking to sell the Bayshore property to RTC for $3.1 million, subject to overbid and auction procedures. The Zuercher Trust owned 88.5% of the Bayshore property, and Sterling Heatley owned the other 11.5%. Both of the owners objected to the proposed sale.

Heatley did not per se oppose the sale of the Bayshore property, but he thought the property could be sold for

[2]In addition to the excerpts of record provided by the parties, we have reviewed and considered all of the additional sale-related filings attached to the bankruptcy court's electronic docket. We can and do take judicial notice of the contents of those filings. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989).

4

significantly more money if the chapter 11 trustee were to retain a real estate broker to market the property. As for the Zuercher Trust, it claimed that the chapter 11 trustee should attempt to lease the vacant tenant space in the building before determining whether the property should be sold. In addition, the Zuercher Trust asserted that the proposed sale price of $3.1 million was a fraction of the market value of the property. Both the Zuercher Trust and Heatley relied on a recent appraisal opining that the fair market value of the property was $4.5 million, and on two broker price opinions in excess of $4 million.

After holding a hearing on the July 2013 sale motion, the court entered an order granting the motion, subject to the condition that, as a prerequisite to the sale, the trustee was required to retain a real estate broker and market the Bayshore property for at least ninety days. However, shortly after the first sales procedures order was entered, RTC withdrew its offer to purchase the Bayshore property for $3.1 million after further due diligence inspections of the property.

Following the loss of his "stalking horse bidder" for purposes of convening a bankruptcy auction sale, the chapter 11 trustee filed a motion for approval to employ two real estate brokers. The lead broker had expertise with bankruptcy sales and the sub-broker had expertise with the sale of similar mixed-use properties in the Bay Area.

Heatley and the Zuercher Trust opposed the employment motion. Their opposition once again insisted that the market value of the Bayshore property exceeded $4 million, so the trustee's proposed listing price of roughly $3.5 million was

5

inadequate. They also complained about the chapter 11 trustee's choice of brokers and his decision to employ two brokers.

In response, the chapter 11 trustee explained the particular expertise each broker would bring to the table and also challenged the appraisal and the two broker price opinions on which Heatley and the Zuercher Trust relied for their assertion that the value of the Bayshore property exceeded $4 million. According to the trustee, all three valuations were based on incomplete and inaccurate information regarding the property. After holding a hearing and considering Heatley's and the Zuercher Trust's opposition, the bankruptcy court entered an order granting the chapter 11 trustee's broker employment motion and approving the $3.5 million listing price.

Shortly after the bankruptcy court approved the employment of the chapter 11 trustee's brokers, the trustee went another round with RTC Equity. This time, RTC agreed to purchase the property for the reduced price of $2.75 million. The trustee filed a motion seeking to vacate the prior sales procedure order to reflect his new agreement with RTC, but the bankruptcy court denied that motion without prejudice and ordered that the property be marketed through June 2014. In addition, the court directed the trustee to amend his marketing materials to remove any reference to a bankruptcy auction, a stalking horse bidder and overbid procedures and to file monthly reports detailing the status of his marketing and sales efforts.

After working with his brokers for several months to market the property, and after lengthy negotiations with more than one prospective purchaser, the chapter 11 trustee found a new

6

stalking horse bidder – Rasmi Zeidan. In June 2014, the trustee and Zeidan entered into a contract for the sale of the Bayshore property for $3,050,000, subject to bankruptcy court approval and overbid procedures. The chapter 11 trustee then filed a motion, in July 2014, for approval of sale and overbid procedures similar to what the trustee had proposed in July 2013 for the aborted RTC sale.

Heatley filed a limited objection to the July 2014 sale procedures motion. In essence, Heatley did not per se oppose the sale but thought that the sale procedures, especially the deposit and overbid amounts, could be lessened to encourage more overbid activity.

The Zuercher Trust and Hujazi also filed an opposition. Unlike Heatley, they sought to prevent the sale. They still asserted that the property was worth more than $4 million and that the proposed sale for significantly less evidenced fraud and collusion between the chapter 11 trustee and Zeidan. The Zuercher Trust and Hujazi relied on an updated version of their June 2013 appraisal, updated as of February 2014. Based on the updated appraisal, the Zuercher Trust and Hujazi claimed that the property was worth $4.5 million as is and $5.7 million if fully rented. They argued that the trustee should have obtained an appraisal to support his position that the property was only worth roughly $3 million.

The Zuercher Trust and Hujazi further alleged that the chapter 11 trustee had a history of extensive misdealings, fraud and collusion in conjunction with the sale of the Zuercher Trust's Los Angeles real property. They also claimed that the

7

chapter 11 trustee's lack of good faith was demonstrated by his allowing the property to become dilapidated. The trustee, in reply, denied that the sale of the Zuercher Trust's Los Angeles property evidenced any bad faith on his part. He further pointed to the monthly marketing status reports he had filed between January and June 2014 as detailing the extensive efforts he had undertaken over the last six months to market and sell the property to the highest and best-qualified purchaser. He also asserted that, in light of those efforts, the proposed sale price to be paid by Zeidan (or any successful overbidder) represented the true market value of the Bayshore property. Once again, the chapter 11 trustee attacked the appraisal presented by the Zuercher Trust and Hujazi as not reflecting the true condition of the property. He further reiterated that the estate had no funds available to make repairs and improvements to the property that would be necessary to increase revenue from the property.

At the August 2014 hearing on the sale procedures motion, the Zuercher Trust and Hujazi pressed their argument that the trustee should have obtained an appraisal to support his view of the value of the property and that their updated February 2014 appraisal was the only reliable evidence of the property's value.

The bankruptcy court was not persuaded that the proposed $3,050,000 sale price was too low. Based on the declarations and other evidence accompanying the sale procedures motion, the bankruptcy court was convinced that the trustee and his brokers had made "good" efforts to market and sell the property and that the results of exposing this property to the market were a valid means of determining the value of the property. The bankruptcy

8

court lessened the overbid deposit requirement to $200,000, based on Heatley's limited objection, but overruled his objections regarding the initial overbid amount and regarding the requirement that potential overbidders demonstrate their financial ability to close.

The bankruptcy court entered its sale procedures order on August 19, 2014, and the Zuercher Trust and Hujazi appealed.

Pursuant to the sale procedures order, the chapter 11 trustee filed in September 2014 a motion for authorization to sell the Bayshore property to Zeidan for $3,050,000 or to the highest qualified overbidder at an auction to be held on the date of the hearing on the sale motion. Among other things, the sale authorization motion requested a finding that Zeidan (or other purchaser) qualified as a good faith purchaser within the meaning of § 363(m). In support of the motion, the chapter 11 trustee explained that a sale of the property was necessary to cut off essential but costly maintenance and repair expenses. The trustee also summarized, once again, the efforts he and his brokers already had made to market and sell the property.

In support of a good faith purchaser finding, the chapter 11 trustee generally pointed to the efforts he and his brokers made to find a willing and able buyer financially capable of closing the sale, and specifically stated: (1) that his dealings with Zeidan were at arms' length and between disinterested/unrelated parties; (2) that the chapter 11 trustee had no prior dealings with Zeidan before entering into negotiations with him for the sale of the Bayshore property; (3) that negotiations with Zeidan were transacted through each party's broker over the course of a

9

few weeks and involved multiple rounds of offers and counter-offers; (4) that the proposed sales price represented the highest and best price a financially capable buyer was willing to pay under the sale terms proposed; and (5) that the proposed sales price accurately reflected the market value of the property. The trustee further noted that the overbid/auction procedures being employed further ensured that the purchaser was acting in good faith.

In opposition to the sale authorization motion, the Zuercher Trust and Hujazi primarily challenged the proposed sale price as being well below the property's market value and also objected to the chapter 11 trustee's request for a good faith finding. According to them, a good faith finding would be inappropriate absent an appraisal showing the property to be worth no more than the proposed purchase price of $3,050,000 and in light of the trustee's alleged misconduct associated with his sale of the Zuercher Trust's Los Angeles property. The Zuercher Trust and Hujazi further argued that a sale of the Bayshore property was inconsistent with the reorganization purpose of the Zuercher Trust's bankruptcy case and that the sale should not be approved absent a tax analysis demonstrating that the sale would not have any adverse tax consequences.

At the October 2014 hearing on the sale authorization motion, no parties appeared seeking to participate in an auction or overbid procedures. Thus, the court stated it would address the proposed sale to Zeidan for $3,050,000. The court ruled that this sale would yield optimal value for the estate and was in the best interests of the estate and its creditors. In so ruling,

10

the court found that the chapter 11 trustee and his brokers "amply" marketed the property for six or seven months and that several purchase offers had been received and considered in a range between $3 million and $ 3.5 million – consistent with the initial $3.5 million listing price. The court further found that the sale and overbid procedures provided adequate opportunity for competitive overbidding and, in fact, the court had modified the proposed procedures to make competitive overbidding more attractive.

With respect to the Zuercher Trust's and Hujazi's appraisal, the bankruptcy court stated that it did not believe the valuation set forth therein accurately represented the market value of the property in its then-current condition. The court explained that, if the property really was worth between $4.5 million and $5 million as claimed in the appraisal, the court would have expected another bidder to come forward with a higher and better offer – but this did not occur.

In support of its holding on the market value of the property, the court found that, in this instance, the sale price offered by the successful purchaser after the trustee's marketing of the property accurately reflected the market value of the property, especially in light of the property's condition and the opportunity for overbidding.

As for the chapter 11 trustee's request for a finding that the purchaser had acted in good faith, the bankruptcy court explicitly found that Zeidan was entitled to a finding that he qualified as a good faith purchaser. In support of this finding, the court pointed out that the record supported the conclusion

11

that the trustee and Zeidan had negotiated with each other at arm's length and in good faith. The court further pointed to the absence of any credible evidence of fraud or collusion between these parties.

Interestingly, at the conclusion of the sale hearing, counsel for Heatley – who had abandoned any lingering opposition he had to the sale – expressed satisfaction with the results of the sale proceedings and further expressed appreciation for both the bankruptcy court's and the chapter 11 trustee's efforts.

The bankruptcy court entered its sale authorization order on October 10, 2014, and the Zuercher Trust and Hujazi timely filed a notice of appeal on October 24, 2014.

After the sale authorization order was entered, the chapter 11 trustee entered into two amendments of the approved sales contract effectively extending the sale closing deadline. These amendments apparently were necessitated by Zeidan's difficulty in closing the sale without obtaining financing. In exchange for the extensions, Zeidan's forfeitable deposit was increased from $105,000 to $155,000. In December 2014, while the extended sale closing period was pending, the Zuercher Trust's bankruptcy case was converted from chapter 11 to chapter 7, and a chapter 7 trustee was appointed to replace the chapter 11 trustee. Neither the Zuercher Trust nor Hujazi filed an appeal from the case conversion order.

The chapter 7 trustee reviewed all of sale-related filings, as well as the sale agreement, as amended, and concluded that the sale was still in the estate's best interests, in light of the condition of the property, in light of the fact that the loan

12

secured by the first trust deed against the property was maturing in July 2015, and in light of the prior difficulties the chapter 11 trustee encountered in marketing and selling the property. Consequently, the chapter 7 trustee took steps to complete the sale to Zeidan, which included a third amendment to the sale agreement, the addition of a requirement that all of the buyer's funds necessary to close the sale be deposited into escrow, and the resolution of certain concerns raised by the title company acting as escrow holder.

In March 2015, the chapter 7 trustee filed her motion seeking formal authorization to close the sale of the Bayshore property according to the terms previously authorized by the bankruptcy court in its October 2014 sale authorization order. In that motion, the chapter 7 trustee asserted that the amendments to the sales contract were minor, did not adversely affect the bankruptcy estate's interests and, hence, did not require court authorization, as contemplated and allowed by the court's October 2014 sale authorization order at paragraph 13.

In their opposition to sale closing motion, the Zuercher Trust and Hujazi made three arguments: (1) the pending appeals from the sale procedures order and the sale authorization order divested the bankruptcy court of jurisdiction to hear and determine the chapter 7 trustee's sale closing motion; (2) the sale price was inadequate; and (3) the court should not have approved the sale in the absence of an appraisal demonstrating that the sale price was at or near the market value of the property.

The bankruptcy court held a hearing on the sale closing

13

motion on March 12, 2015, at which it granted the motion. The court rejected the Zuercher Trust's and Hujazi's jurisdictional argument. According to the court, its hearing and ruling on the sale closing motion was, in essence, in furtherance and enforcement of its prior sale orders and did not in fact alter those orders or otherwise alter the matters on appeal. As for the Zuercher Trust's and Hujazi's other arguments, the bankruptcy court declined to address them because they merely recapitulated arguments which they had made in opposition to the prior sale motions and which the court already had rejected. The issue of whether Zeidan still qualified as a good faith purchaser was neither raised nor addressed in conjunction with the sale closing motion.

On March 18, 2015, the bankruptcy court entered its amended order granting the chapter 7 trustee's sale closing motion. The Zuercher Trust and Hujazi did not file an appeal from that order.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(N), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1.  Do the Zuercher Trust and Hujazi have standing to appeal the bankruptcy court's sale orders?

2.  Does the limitation of appellate remedies set forth in §363(m) apply to this matter and render these appeals moot?

3.  Did the bankruptcy court err when it approved the sale of

14

the Bayshore property to Zeidan for $3,050,000?[3]

## STANDARDS OF REVIEW

The appellants' standing is a question of law we may review sua sponte and that we consider de novo. Menk v. LaPaglia (In re Menk), 241 B.R. 896, 903 (9th Cir. BAP 1999).

A bankruptcy court's determination of whether a purchaser of property qualifies as a good faith purchaser for purposes of § 363(m) is a finding of fact reviewed for clear error. Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002). A finding of fact is not clearly erroneous unless it is illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

The bankruptcy court's approval of a sale under § 363(b) is reviewed for an abuse of discretion. Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP 2010). The bankruptcy court abuses its discretion if it applies an incorrect legal rule or makes a clearly erroneous factual finding. United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

---

[3]The propriety of the court hearing and ruling on the March 2015 sale closing motion is not before us for review because the Zuercher Trust and Hujazi did not file a notice of appeal from that order. If the Zuercher Trust and Hujazi desired appellate review of that order, they should have filed a timely notice of appeal. The sale closing order was a separately appealable post-judgment order in furtherance of the October 2014 sale authorization order. See generally Hunt v. City of Los Angeles, 638 F.3d 703, 719 (9th Cir. 2011) (identifying post-judgment fees orders as separately appealable post-judgment orders); Kirkland v. Legion Ins. Co., 343 F3d 1135, 1139-1140 (9th Cir. 2003) (identifying post-judgment orders enforcing settlement agreements as separately appealable post-judgment orders).

15

**1. Standing Issue**

The Zuercher Trust and Hujazi lack appellate standing unless they were directly and adversely affected pecuniarily by the orders on appeal. Cheng v. K & S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 455 (9th Cir. BAP 2004), aff'd, 160 Fed.Appx. 644 (9th Cir. 2005); In re Menk, 241 B.R. at 917. The chapter 7 trustee argues on appeal that neither appellant satisfies this "person aggrieved" standard because the Zuercher Trust bankruptcy estate is hopelessly insolvent. The trustee relies on one of his filed reports on the financial condition of the estate as establishing that the estate has roughly $29 million in unsecured claims filed against it and roughly $1.3 million in assets.

It is true that, when a bankruptcy estate is hopelessly insolvent, the debtor typically will lack standing to appeal orders affecting the size of the bankruptcy estate. Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983); see also Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 778 n.2 (9th Cir. 1999).

Even so, we decline to dismiss these appeals on standing grounds for two reasons. First, the chapter 7 trustee's evidence regarding the insolvency of the Zuercher Trust bankruptcy estate does not fully account for the estate's potential assets and liabilities. For instance, the insolvency evidence does not account for the potential results of the chapter 7 trustee's adversary proceeding seeking to recover several parcels of real property on fraudulent transfer grounds. The insolvency evidence

16

also does not account for the potential that, if the Zuercher Trust and Hujazi were to prevail in these appeals and the sale order was unwound, the bankruptcy estate arguably might subsequently obtain net sale proceeds in a significantly greater amount if the Bayshore property was later resold. Finally, the insolvency evidence only took into account the amount of unsecured claims filed. The chapter 7 trustee did not offer any estimate regarding what percentage of those claims actually might be allowed.

As a second reason for not dismissing these appeals on standing grounds, we note that Hujazi claims to be a co-debtor on many of the same claims filed against the Zuercher Trust estate. As a result, she likely is adversely affected by orders affecting the size of the estate (and the amount of assets available for distribution to creditors) even if she won't be sharing in any distributions from the Zuercher Trust bankruptcy estate.[4]

---

[4]After these appeals were fully briefed, some of Hujazi's creditors succeeded in obtaining an order for relief against Hujazi in the involuntary chapter 7 case they brought against her, In re Hujazi, Case No. 13-30477 (Bankr. N.D. Cal Nov. 30, 2015), and a chapter 7 trustee has been appointed therein. As a result, Hujazi's chapter 7 trustee is entitled to step into Hujazi's shoes for purposes of prosecuting these appeals. See § 323; Rule 6009. Hujazi's chapter 7 trustee recently filed a statement in these appeals indicating that she has not yet had an opportunity to determine whether Hujazi's bankruptcy estate might somehow benefit by her active participation in these appeals. Nonetheless, we have decided to proceed with our resolution of these appeals. Hujazi personally has had a full and fair opportunity to prosecute these appeals and indeed has fully participated in briefing and oral argument. As for Hujazi's bankruptcy estate, we anticipate that her chapter 7 trustee ultimately will conclude that the estate has not been prejudiced by our decision to proceed.

17

Our decision not to dismiss these appeals on appellate standing grounds is bolstered by the fact that appellate standing doctrine is not a constitutional mandate but rather is a prudential, judge-made rule applied in the interests of judicial economy and efficiency. See generally In re P.R.T.C., Inc., 177 F.3d at 778 (describing nature of appellate standing doctrine). In light of the circumstances discussed immediately above, we decline to dismiss these appeals on appellate standing grounds.

**2. Mootness Issue**

The chapter 7 trustee also argues on appeal that § 363(m) applies to this matter and has rendered these appeals moot. Section 363(m) limits the remedies available on appeal when it is established that the purchaser has acted in good faith. T.C. Investors v. Joseph (In re M Capital Corp.), 290 B.R. 743, 745 (9th Cir. BAP 2003).[5] Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity

[5]From time to time in this decision, we cite to the Panel's prior decision in In re M Capital Corp. to support some general statements about the legal effect of and requirements for application of § 363(m). Nothing in this decision is meant to endorse or rely upon the aspect of In re M Capital Corp. holding that the burden of proof to establish good faith for purposes of § 363(m) is on the party seeking to invoke § 363(m). See id. at 747-48. As we indicated in In re Zuercher Trust of 1999, 2014 WL 7191348, at *9-10, it is difficult or impossible to reconcile this aspect of In re M Capital Corp. with Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLP), 424 F.3d 963, 970 (9th Cir. 2005), and Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1489 (9th Cir. 1987).

18

knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

The trustee points out that the bankruptcy court made an explicit finding regarding the purchaser's good faith in its October 2014 sale authorization order and that the trustee explicitly requested this finding in its moving papers. In turn, the court's good faith finding was supported by its subsidiary findings regarding the circumstances leading up to the sale, regarding the market value of the Bayshore property and regarding the negotiations between Zeidan and the chapter 11 trustee.

The Zuercher Trust and Hujazi challenge the good faith finding on appeal on the same grounds they relied on in the bankruptcy court. They claim that the purchase price paid by Zeidan was a fraction of the actual market value of the Bayshore property. In support, they rely on the June 2013 appraisal (updated as of February 2014) they presented to the bankruptcy court. They also claim that the bankruptcy court should have required the trustee to obtain his own appraisal report in support of the purchase price paid for the property before finding that Zeidan had acted in good faith. They further claim that the chapter 11 trustee's alleged misconduct in relation to the sale of the bankruptcy estate's Los Angeles property is indicative of bad faith in relation to the sale of the Bayshore property.

The bankruptcy court's findings effectively addressed and rejected all of these claims. The court specifically found that the sale price Zeidan offered and paid reflected the market value

19

of the property because the property was amply exposed to the market and to the opportunity for competitive bidding and that Zeidan's offer was the highest and best offer received compliant with the sale terms. The bankruptcy court further found that the trustee was not obliged to obtain his own supporting appraisal because the direct exposure of the Bayshore property to the market provided an accurate and reliable indication of value. Finally, the court found that none of the Zuercher Trust's and Hujazi's allegations of fraud, collusion or other misconduct were supported by any credible evidence.

The bankruptcy court's subsidiary findings were sufficient to support its good faith finding. Our prior decisions indicate that the following factors are relevant to the good faith determination: (1) compliance with approved sale procedures; (2) arms-length negotiations, leading to a sale reflecting a purchase price at or near the market value of the property; (3) opportunity for competitive bidding; (4) knowledge in advance of the sale of who the proposed purchaser is; and (5) the absence of any evidence of fraud, collusion or grossly unfair advantage over other bidders. See In re M Capital Corp., 290 B.R. at 746-49; see also Zuercher Trust of 1999 v. Kravitz (In re Zuercher Trust of 1999), 2014 WL 7191348 (Mem. Dec.) (9th Cir. BAP Dec. 17, 2014); Kwai v. Wirum (In re Glob. Reach Inv. Corp.), 2012 WL 933594, at *2-3 (Mem Dec.) (9th Cir. BAP Mar. 20, 2012) aff'd, 570 F. App'x 723 (9th Cir. 2014).

Here, the bankruptcy court effectively found that each of these factors militated in favor of the court finding that Zeidan had purchased the Bayshore property in good faith. On this

20

record, we cannot say that any of the bankruptcy court's findings relating to Zeidan's good faith were illogical, implausible or without support in the record.

These findings also distinguish this matter from the three prior Panel decisions that the Zuercher Trust and Hujazi rely upon in support of their argument regarding the purchaser's alleged bad faith – In re M Capital Corp., In re Thomas and In re Fitzgerald. In In re M Capital Corp. and In re Thomas, there were no good faith findings requested or made at the time the sales motions were approved. In re M Capital Corp., 290 B.R. at 749; In re Thomas, 287 B.R. at 784. And in In re Fitzgerald, the bankruptcy court signed off on a "boilerplate" good faith finding even though the trustee neither requested a good faith finding nor presented evidence to support such a finding. In re Fitzgerald, 428 B.R. at 878, 881. In addition, there was legitimate reason in In re Fitzgerald to doubt the good faith of the purchaser. See id. at 883.

That being said, the Zuercher Trust and Hujazi presented for the first time on appeal new facts concerning events occurring after entry of the October 2014 sale authorization order which they assert call into question Zeidan's good faith. The Zuercher Trust and Hujazi point to the two sale closing extensions the chapter 11 trustee granted to Zeidan without court approval and the additional several-month delay in closing permitted by the chapter 7 trustee. According to the Zuercher Trust and Hujazi, these extensions and delays undermine the bankruptcy court's earlier findings regarding the market value of the Bayshore property, regarding the absence of collusion and grossly unfair

21

advantage and, ultimately, regarding Zeidan's good faith.

We admit to having a considerable degree of skepticism regarding the inference of bad faith the Zuercher Trust and Hujazi attempt to draw from the events occurring between the time of entry of the October 2014 sale authorization order and the entry of the March 2015 sale closing order. Indeed, we are tempted to hold that no trier of fact reasonably could find on the facts presented that Zeidan lacked good faith in purchasing the Bayshore property.

Nonetheless, we already have held in an appeal arising from the same bankruptcy case that, when new facts come to light after the sale authorization order is entered plausibly calling into question the good faith of the purchaser, and when the issue of whether § 363(m) applies is critical to the disposition of the appeal, the appropriate procedure is a limited remand to permit the bankruptcy court to hear and consider the new facts. In re Zuercher Trust of 1999, 2014 WL 7191348, at *13-15 (citing In re Thomas, 287 B.R. at 785-86). This holding qualifies as the law of the case, and we are not aware of any facts militating against application of that doctrine under any of the doctrine's recognized exceptions. See generally Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla), 235 B.R. 449, 454 (9th Cir. BAP 1999) (explaining doctrine and its exceptions), aff'd, 242 F.3d 381 (9th Cir. 2000) (table).

Notwithstanding the above, we perceive a key distinction between the matter currently before us and the prior Zuercher Trust appeal this Panel disposed of in 2014: there the Panel apparently concluded that the issue regarding the application of

22

§ 363(m) was critical to the resolution of the appeal. Here, in contrast, we are prepared to dispose of this appeal on alternate grounds. When, as here, the merits of the appeal have been fully briefed, oral argument has been held and the resolution of the appeal on the merits is straightforward, we believe the better, more-efficient practice is to hear and decide the merits of the appeal, rather than to remand for a supplemental good faith determination in order to answer the question of whether § 363(m) applies and whether these appeals have thereby been rendered moot.

Our decision here to press forward with the merits is consistent with Ninth Circuit law regarding mootness. The proponent advocating mootness has the burden of proof to establish its existence. Focus Media, Inc. v. Nat'l Broad. Co. Inc. (In re Focus Media, Inc.), 378 F.3d 916, 923 (9th Cir. 2004). Unless the proponent establishes mootness, the appeal should not be dismissed on that basis. Id.

Here, mootness cannot be established unless and until the bankruptcy court on remand makes a supplemental good faith determination and this Panel upholds that determination after remand. Until then, we cannot correctly say that § 363(m) applies and that this appeal is moot.

Accordingly, we will proceed to address the merits of these appeals.

**3. Merits arguments**

While the merits arguments raised by the Zuercher Trust and Hujazi are scattered in different sections of their opening appeal brief, they effectively boil down to four key assertions.

23

All four of these assertions are subsumed within the Zuercher Trust's and Hujazi's overarching claim that the bankruptcy estate did not receive optimal value in exchange for the Bayshore property. The parties do not dispute on appeal that, as a prerequisite to obtaining sale authorization, the trustee needed to demonstrate that the proposed sale would yield optimal value for the bankruptcy estate. See In re Fitzgerald, 428 B.R. at 884; Simantob v. Claims Prosecutor, LLC. (In re Lahijani), 325 B.R. 282, 288-89 (9th Cir. BAP 2005).

The Zuercher Trust's and Hujazi's four key assertions on appeal are as follows: (1) the bankruptcy court erred by finding that the property was amply marketed; (2) the bankruptcy court erred by finding that the sale price obtained from Zeidan accurately reflected the market value of the property; (3) the bankruptcy court erroneously ignored the Zuercher Trust's and Hujazi's appraisal; and (4) the bankruptcy court erred by not requiring the chapter 11 trustee to obtain an appraisal supporting its assertion that the proposed sale price to Zeidan was at or near the market value of the property.

With respect to the first two assertions, it suffices for us to say that we have reviewed the entire bankruptcy court record, and we are not persuaded that the court's marketing finding or its finding regarding the value of the Bayshore property were illogical, implausible or without support in the record. While the bankruptcy court reasonably could have drawn other inferences from the facts in the record, its choice between two permissible views of the evidence cannot be clearly erroneous. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

24

As for the third assertion, the bankruptcy court did not ignore the Zuercher Trust's and Hujazi's appraisal. Rather, the court specifically found that it did not believe that the appraisal accurately reflected the market value of the property. The court, instead, credited the evidence of the chapter 11 trustee showing that the appraisal was based on inaccurate and incomplete information about the then-current condition of the Bayshore property. Similar to our holding regarding the court's marketing and value findings, we cannot say that the court's findings regarding the appraisal were illogical, implausible or without support in the record.

Finally, we hold that the bankruptcy court did not err by not requiring the chapter 11 trustee to obtain an appraisal. The Zuercher Trust and Hujazi have not cited any authority requiring an appraisal under similar circumstances, nor are we aware of any such authority. For the reasons stated by the bankruptcy court, we agree with the bankruptcy court that the chapter 11 trustee, on this record, properly could rely upon his marketing and sales efforts to establish the market value of the Bayshore property.

Accordingly, we reject all of the Zuercher Trust's and Hujazi's assertions relevant to the merits of these appeals.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's August 2014 sale procedures order, and we also AFFIRM the bankruptcy court's October 2014 sale authorization order.