FILED

MAR 13 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. NC-16-1428-TaBS |
| | ) | |
| ESTERLINA VINEYARDS & WINERY, LLC, | ) | Bk. No. 15-10841 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| CRAIG STERLING; ERIC STERLING, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| LINDA S. GREEN, Chapter 7 Trustee; BANK OF THE WEST, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on January 25, 2018
at San Francisco, California

Filed – March 13, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

Appearances:    Shane J. Moses of McNutt Law Group LLP for appellants; John H. MacConaghy of MacConaghy & Barnier, PLC for appellee Linda S. Green, Chapter 7 Trustee; Bret R. Rossi of Kronick, Moskovitz, Tiedemann & Girard for appellee Bank of the West

Before:    TAYLOR, BRAND, and SPRAKER, Bankruptcy Judges.

[*]    This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Debtor Esterlina Vineyards & Winery, LLC received several secured loans from Bank of the West ("BOTW"); its principals, brothers Craig and Eric Sterling, personally guaranteed these obligations. When Esterlina defaulted, BOTW initiated non-judicial foreclosure proceedings and sought to recover on the Sterling guaranties through a state court action.

Esterlina responded with a chapter 11[1] petition and lender liability affirmative defenses to the BOTW claims. The Sterlings similarly asserted lender liability causes in a cross-complaint in the state court action.

The chapter 11 case never accomplished a reorganization; instead, Esterlina liquidated the majority of its assets and then converted its case to chapter 7. Thus, the chapter 7 Trustee took over a case with virtually no unliquidated assets. But Esterlina's alleged lender liability claims remained in the estate, and the Trustee negotiated and the bankruptcy court approved a sale and settlement with BOTW notwithstanding an objection and counteroffer by the Sterlings.

The Sterlings appeal; they argue that the trustee failed to provide evidence supporting her proposed transactions and that they matched the BOTW offer and sweetened the deal with an offer to share litigation proceeds. We agree that this argument is facially attractive; but after reviewing the record, we

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

determine that the bankruptcy court had a sufficient basis for its decision and did not abuse its discretion in approving the trustee's original proposal. Accordingly, we AFFIRM.

## FACTS

**Esterlina's bankruptcy and early proceedings**. Esterlina filed its chapter 11 petition the day before BOTW's scheduled foreclosure. BOTW actively participated in the case; it filed three proofs of secured claims asserting liens on the virtual entirety of Esterlina's assets. Esterlina objected to all three claims on the alleged basis that BOTW: "obtained the [Esterlina's] consent to the various loan documents through fraud, deceit or misrepresentation." Put simply, it sought disallowance of BOTW's claims based on alleged lender liability counterclaims.

**Esterlina disposes of substantially all of its assets.** While the claim objection process simmered away, Esterlina finalized a sale, free and clear of specified interests, of its interest in real property and equipment for $5,118,855. The majority of these proceeds were deposited into a blocked account, pending further order of the bankruptcy court. Shortly thereafter, the bankruptcy court approved the sale of the majority of the estate's remaining assets through a $325,000 BOTW credit bid. Only Esterlina's interest in its bank accounts, its alleged claims against BOTW, and negligible other personal property remained unliquidated.

The bankruptcy court converted Esterlina's bankruptcy case to chapter 7; Esterlina withdrew its objection to the BOTW claims.

3

But the move toward peace in the Esterlina bankruptcy did not carry over to the state court guaranty action. After the Esterlina conversion, the Sterlings filed a cross-complaint, asserting lender liability causes of action on their own behalf against BOTW.

In September 2016, the bankruptcy case was reassigned from Judge Thomas E. Carlson to Judge Alan Jaroslovsky.

**The chapter 7 trustee's sale and compromise motion and the present appeal**. Chapter 7 trustee Linda Green had few assets to liquidate and promptly negotiated a compromise of controversy and a sale of Esterlina's remaining assets to BOTW. The agreement provided that: BOTW would pay the estate $25,000; the Trustee would release to BOTW the funds in the blocked account; the Trustee would sell to BOTW all remaining assets, including the alleged lender liability claims; and the parties would exchange general mutual releases.

The Sterlings opposed. First, they questioned the benefit of the sale and settlement to the estate or creditors and argued that $25,000 would not pay all administrative claims or any unsecured claims. Second, they provided a counter-offer and proposed to match the $25,000, waive their claims against the estate, and share 25% of any lender liability action recoveries with the estate. In connection with the litigation sharing agreement, they made clear that the minimum paid would be $25,000 and that it would be paid even if there was a settlement. Finally, they asserted that the Trustee had not submitted any evidence to support the motion.

The day before the hearing, BOTW's counsel filed a

4

declaration in response to the Sterlings' opposition. He represented that the superior court had granted BOTW's motion for judgment on the pleadings on the Sterlings' amended cross-complaint against BOTW. That same day, the Sterlings' counsel filed a declaration stating that he had prepared and was planning to file a second amended cross-complaint.

The bankruptcy court heard the matter and expressed some tentative views; it also noted that "it would be a good idea for me to chat with Judge Carlson and take another look at the pleadings." Hr'g Tr. (Nov. 18, 2016) 16:17-18. The bankruptcy judge concluded the hearing by stating that he would "think about" the matter, "[l]ook over the file again," and then "have a written decision for you within ten days." Id. at 17:21-23.

And ten days later, the bankruptcy court entered a memorandum decision overruling the Sterlings' objection and granting the Trustee's motion. The decision started by noting that the undersigned judge had "reviewed the entire record of this case in detail" and had "consulted with Judge Carlson . . . ." November 28, 2016 Memorandum on Trustee's Motion to Approve Compromise ("Mem. Dec.") at 1 n.1. The bankruptcy court then weighed the offers:

> The Sterlings correctly argue that the proceeds of the Trustee's compromise won't go very far, not even covering the estate's estimated administrative expenses. Instead, they propose to purchase the estate's claim against the Bank for $25,000.00 now, plus 25% of their actual recovery from the Bank but no less than an additional $25,000.00. They argue that their offer is superior to that of the Bank. The court does not agree.

Id. at 2. The bankruptcy court then explained why:

> The Sterlings' offer is most likely to result in only

5

increased administrative expenses, not any sort of recovery for creditors. Lender liability claims are difficult to successfully prosecute and the court sees nothing in this case which would make such claims unusually strong. It would also be highly unusual for such claims not to have been waived by now, as waivers are invariably contained in agreements to extend, refinance or forebear which have usually been made long before a bankruptcy filing on the eve of foreclosure. Tellingly, the attorney handling the litigation in state court declined [chapter 7 Trustee] Green's request to represent the estate on a contingency basis. The most likely result of accepting the Sterlings' offer is that the Sterlings litigate against the Bank in state court for a time before all their arguments are rejected; the bankruptcy estate becomes subject to even more administrative expenses, and the second $25,000.00 becomes uncollectible either because the Sterlings have become insolvent or because the estate has no means to engage in collection litigation.

Id. Finally, the bankruptcy court remarked:

The court does not believe that Green is looking for a quick and easy settlement at the expense of the creditors of the estate; she and her counsel are known for aggressively pursuing meritorious claims on behalf of bankruptcy estates. The court agrees with their analysis in this case that the bankruptcy estate has no claims against the Bank which warrant rejection of the Bank's nominal settlement offer, and that the Sterlings' offer is in fact of lesser benefit to the estate.

Id.

The bankruptcy court entered a separate order approving the compromise and sale of property (the "Order").

The Sterlings timely appealed; they also obtained a stay of the Order, conditioned on their posting a bond.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Do the Sterlings have appellate standing?

6

Did the bankruptcy court abuse its discretion in approving the Order?

**STANDARDS OF REVIEW**

We consider appellate standing de novo. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 879 (9th Cir. 2012).

We review the bankruptcy court's approval of a settlement for an abuse of discretion. Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986). We also review § 363 sale orders for an abuse of discretion. Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP 2010).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

**A.  The Sterlings have appellate standing.**

As a preliminary matter, the Trustee argues that the Sterlings lack standing to appeal from the Order.

To have standing to appeal from a bankruptcy court order, an individual must show that she or he is a "person aggrieved." Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983). For instance, a "hopelessly insolvent debtor does not have standing to appeal orders affecting the" estate's size

7

because "[s]uch an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his [or her] rights." Id. So, in the context "of a sale or other disposition of estate assets, creditors have standing to appeal, but disappointed prospective bidders who are not creditors usually do not have standing to appeal." Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 290 n.13 (9th Cir. BAP 2005).

Here, the Trustee tries to blend the two scenarios.

First, she asserts that the Sterlings lack appellate standing because they are simply disappointed non-buyers of a bankruptcy estate asset. But the Trustee acknowledges that the Sterlings would later file timely proofs of claims and that Esterlina scheduled Craig Sterling as an unsecured creditor. So the Sterlings are more than just disappointed non-buyers; they are creditors of the estate.

Second, the Trustee argues that this appeal will not impact the Sterlings' claims as unsecured creditors will not be paid in this administratively insolvent case no matter how this appeal is resolved. While this is likely true, we agree with the bankruptcy court that it is not conclusively established. At the hearing, the bankruptcy court acknowledged that there was a possibility – "very, very, very, very unlikely, but not impossible" — that the Sterlings's offer would recover some funds for unsecured creditors. Hr'g Tr. at 17:19. Accordingly, we cannot conclude with absolute certainty that unsecured creditors would be out of the money under the Sterlings' proposal. Nor, for that matter, did the Trustee cite any law

8

establishing that unsecured creditors in an out-of-the-money case lack appellate standing.

The Sterlings thus have standing to appeal as unsecured creditors.

**B.   The bankruptcy court did not abuse its discretion in approving the settlement and approving the sale.**

Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  "The bankruptcy court has great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1998).  That discretion, however, "is not unlimited." Id.  The bankruptcy court "may approve a compromise only if it is 'fair and equitable.'"  Id. (quoting In re A & C Properties, Inc., 784 F.2d at 1381).

The "purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  In re A & C Properties, 784 F.2d at 1380–81.  The law "favors compromise and not litigation for its own sake . . . ." Id. at 1381.

Because "the disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim," a Rule 9019 compromise can "simultaneously implicate the 'sale' provisions under section 363 as implemented by Rule 6004 and the 'compromise' procedure of Rule 9019(a)."  Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp.,

9

Inc.), 292 B.R. 415, 421 (9th Cir. BAP 2003). The "bankruptcy court has the discretion to apply § 363 procedures to a sale of claims pursuant to a settlement approved under Rule 9019." Adeli v. Barclay (In re Berkeley Delaware Court, LLC), 834 F.3d 1036, 1040 (9th Cir. 2016). As the Ninth Circuit reasoned: "We see no good reason why a trustee and the bankruptcy court cannot utilize the procedures of § 363 in certain settlements in order to ensure maximum value for the estate." Id.

### 1. The bankruptcy court did not err by not holding an auction.

The Sterlings argue that the bankruptcy court erred by not requiring an auction and encouraging overbidding. We disagree.

The "price achieved by an auction is ordinarily assumed to approximate market value when there is competition by an appropriate number of bidders." In re Fitzgerald, 428 B.R. at 883 (citing In re Lahijani, 325 B.R. at 289)). The Sterlings' argument, thus, has some facial appeal given that the Trustee's proposal involved a sale of the lender liability claims. They further support their argument with reference to the Panel's Mickey Thompson decision where the Panel held that a bankruptcy court may consider applying § 363 sale procedures to a Rule 9019 settlement. 292 B.R. at 421. And in In re Berkeley Delaware Court, LLC, the Ninth Circuit agreed and also held that the bankruptcy court **may** use § 363 procedures in the context of a Rule 9019 settlement. 834 F.3d at 1040. So, an auction could also be required if this was viewed solely as a settlement of a claim.

But an auction and bidding procedures were neither required

10

nor requested here. The only potential bidders were BOTW and the Sterlings; neither of whom requested an auction nor suggested that they were willing to overbid in the documents they filed or the arguments they made before the bankruptcy court. They stood on their offer and counter-offer. As a result of this silence before the bankruptcy court, the Sterlings waived the issue on appeal. Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.), 773 F.3d 990, 998 (9th Cir. 2014) ("In general, a federal appellate court does not consider an issue not passed upon below." (quotation marks and citation omitted)). And, in any event, the bankruptcy court did not abuse its discretion by not forcing the parties to bid against each other where neither party requested this opportunity.

### 2. The bankruptcy court did not err when it found that BOTW's offer was superior.

The above, however, does not mean that the BOTW and Sterlings' offers are incommensurable. In the § 363(b) context, the bankruptcy court is obliged to "assure that optimal value is realized by the estate under the circumstances." In re Lahijani, 325 B.R. at 288. Thus, the bankruptcy court considered the relative economic value of the two offers; it concluded that BOTW's offer was superior and that the Sterlings' offer was "in fact of lesser benefit to the estate." Mem. Dec. at 2:21. This was not an abuse of discretion.

On appeal, the Sterlings argue that their offer was more valuable than BOTW's offer because they offered to match BOTW's $25,000 cash offer and then proffered a percentage of any successful claim. So long as the probability of recovery is not

11

zero, they claim, the present value calculation would yield some value. We disagree with their conclusion.

We start by reviewing the two offers. BOTW offered $25,000 and a general release, which would include its almost $2,000,000 deficiency claim. The Sterlings offered $25,000, waiver of their claims against the estate, and "if the State Court Action is resolved in [the Sterlings'] favor through a dispositive ruling or settlement, they will pay the bankruptcy estate 25% of any actual recovery, and no less than $25,000." Although the Sterlings asserted they had claims against the estate, they never told the bankruptcy court how much those claims were worth; so they failed to monetize their releases' value, complicating value comparisons.[2]

The Sterlings argue that BOTW's waiver of its unsecured claim created no value for the estate because, under BOTW's offer, unsecured creditors would see no recovery. If the Trustee was only concerned with recovery for unsecured creditors, we would agree. But a chapter 7 trustee must also consider the interests of the bankruptcy estate. This includes administrative claimants — here, chapter 11 priority claims.

Considering the administrative claimants' interests, the Trustee's acceptance of BOTW's offer minimized the risk of further dilution of those claims; the estate would not fund the lender liability litigation and other administration would terminate with prompt case closure because BOTW provided and

---

[2] The Sterlings eventually, in February 2017, each filed a claim for $1,974,129.51.

12

received a general release. As the bankruptcy court explained in its memorandum decision, it viewed the Sterlings' offer as having significant potential disadvantages because it would "most likely" lead to "increased administrative expenses, not any sort of recovery for creditors." Mem. Dec. at 2:6-7.[3] The BOTW offer also avoided the risk of adverse claims against the estate arising from continued litigation.

Comparing the two offers requires more than just comparing BOTW's "$25,000" to the Sterlings' "$25,000 plus the net present value of the Sterlings' additional, minimum $25,000 if they prevail in the litigation." The Trustee had to consider the immediate value of BOTW's specific release of a substantial deficiency claim and the impact of an ability to promptly close the case. The Trustee also had to consider the possibility that the Sterlings' offer, although it had the potential for an upside, carried the risk of a significant downside including the risk of increased administrative expense.[4] After accounting for

---

[3] The Trustee's counsel explained that the Trustee was concerned about the estate's exposure to malicious prosecution liability if the Sterlings pursued the claims on the estate's behalf and then lost, which the Trustee's counsel thought was a fairly likely result. As the Trustee's counsel put it at the hearing: "I don't think it's [$25,000] versus [$25,000]; I think it's a clean [$25,000] from the bank versus [$25,000] from the Debtor's principals, and we might have to be giving some of that [$25,000] back to the bank if the bank prevails in an attorney's fees claim." Hr'g Tr. at 6:7-11.

[4] And the Trustee was open to balancing this potential risk — at the hearing, the Trustee's counsel stated: "[I]f [the Sterlings] came in and said, here's a cashier's check for a hundred thousand dollars, you know, I wouldn't be able to stand
(continued...)

13

these factors, the Trustee concluded and the bankruptcy court found that the Sterlings' offer was not superior; it was not a true overbid. On this record, we are not prepared to conclude that this was clearly erroneous.

### 3. The A & C Properties factors support approval of the compromise.

When deciding whether a compromise is fair and reasonable, a bankruptcy court should consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, 784 F.2d at 1381 (quoting In re Flight Transp. Corp. Secs. Litig., 730 F.2d 1128, 1135 (8th Cir. 1984)). The trustee has the burden to persuade the bankruptcy court that the compromise is fair and equitable. Id. We must affirm the bankruptcy court's decision if it "amply considered the various factors that determine[] the reasonableness of the compromise . . . ." Id.

Although the bankruptcy court issued a memorandum decision,

---

⁴(...continued)
up here." Hr'g Tr. at 7:23-25. The bankruptcy court asked if $30,000 would be enough. Id. at 8:5-6. Trustee's counsel said "I think still, because of this potential claim that the bank may have to get that money back, I don't think the estate is going to net out a better result. I think it's got to be significantly more than that before it's worth the risk." Id. at 8:7-11. Despite this colloquy (i.e., the Trustee's counsel suggesting that the Trustee might accept a larger counter-offer), the Sterlings did not raise their offer or request an auction.

14

it did not individually parse the four factors and make explicit findings on each. But it was not obliged to, and "where the record supports approval of the compromise, the bankruptcy court should be affirmed." Id. at 1383.

We start with the Sterlings' argument that the bankruptcy court lacked a sufficient evidentiary record to approve the settlement because the Trustee did not include any declarations or affidavits with the moving papers. The Trustee argues that the Sterlings waived this point by not timely objecting to the motion; BOTW contends that the bankruptcy court stated that it reviewed the entire record.

Each is correct in some respect. The Trustee did not provide the bankruptcy court with declarations or affidavits — and we, make no mistake, find this troubling. But the bankruptcy court, after the hearing, considered the entirety of the case's history, including BOTW's proofs of claims and Esterlina's objection to the claims, in which it asserted the lender liability counterclaims. And although the Sterlings filed their opposition just days before the hearing, the bankruptcy court considered the opposition, and the Trustee did not ask the bankruptcy court to strike it as filed late.

So we consider the record that the bankruptcy court had before it when it made its decision. As bankruptcy cases go, the case was not in its infancy — it was over a year old and contained over a hundred docket entries. During the chapter 11 phase, the bankruptcy court approved the sale of substantially all of Esterlina's assets and received testimony about the value of Esterlina's property. The bankruptcy court also, as it was

15

entitled to, relied on the parties' representations; the bankruptcy court knew that the Trustee unsuccessfully sought contingency fee counsel to pursue the lender liability claims. But more to the point, the Sterlings never asked the bankruptcy court to hold an evidentiary hearing; they never isolated any disputed material facts. With that in mind, we turn to the individual factors.

**The probability of success in the litigation**. At the hearing, the bankruptcy court explained: "I've already formed the opinion, quite frankly, that [the Sterlings'] claims against the bank are weak . . . ." Hr'g Tr. at 17:12-14. In its memorandum decision, the bankruptcy court expounded further: "It would also be highly unusual for such [lender liability] claims not to have been waived by now, as waivers are invariably contained in agreements to extend, refinance or forebear which have usually been made long before a bankruptcy filing on the eve of foreclosure." Mem. Dec. at 2:8-11. Finally, the bankruptcy court found: "The court agrees with [the trustee and her counsel's] analysis in this case that the bankruptcy estate has no claims against [BOTW] which warrant rejection of [BOTW's] nominal settlement offer . . . ." Id. at 2:19-21.

The Sterlings do not question this on appeal. Further, the bankruptcy court had uncontroverted evidence that the state court had granted BOTW's motion for judgment on the pleadings on the Sterlings' cross-complaint asserting lender liability causes of action albeit without prejudice.

This factor favors the Trustee's settlement.

16

**The difficulties, if any, to be encountered in the matter of collection.** The bankruptcy court did not explicitly consider this factor when considering BOTW's offer. Nor does it particularly favor compromise; there would likely not be much difficulty in collecting from BOTW, a bank. On the other hand, the bankruptcy court expressly noted that, if the estate accepted the Sterlings' offer, dwindling estate assets could negatively affect attempts to collect from the Sterlings.

**The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.** The bankruptcy court touched on this factor in two respects. First, drawing upon a decade plus of judicial experience, the bankruptcy court observed that "[l]ender liability claims are difficult to successfully prosecute and the court sees nothing in this case which would make them unusually strong." Mem. Dec. at 2:7-8. And as noted above, the bankruptcy court had evidence that the state court had entirely disposed of the Sterlings' cross-complaint alleging similar causes of action; the litigation would be complex, drawn-out, and expensive. Second, the bankruptcy court remarked: "Tellingly, the attorney handling the litigation in state court declined [the chapter 7 trustee's] request to represent the estate on a contingency basis." Id. at 2:11-12. So it would cost the estate to pursue the claims.

Further, the Sterlings do not distinctly and specifically address these points in their opening appellate brief; they thus waived them on appeal. Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate courts "will not ordinarily consider matters on appeal that are not specifically

17

and distinctly raised and argued in appellant's opening brief").

On this record, then, the bankruptcy court could conclude that this factor favors the settlement.

**The paramount interest of the creditors and a proper deference to their reasonable views.**

As the Ninth Circuit explained, "while creditors' objections to a compromise must be afforded due deference, such objections are not controlling, and while the court must preserve the rights of the creditors, it must also weigh certain factors to determine whether the compromise is in the best interest of the bankrupt estate." In re A & C Properties, 784 F.2d at 1382 (citations omitted). Unsecured creditors have a voice but not a veto.

And, as the above makes clear, "recovery for unsecured creditors" is not the relevant standard. The trustee must consider whether the compromise is in the best interests of the bankruptcy estate. In this particular case, the Trustee had to consider the interests of both chapter 11 administrative claimants and unsecured creditors. And the Trustee appropriately considered the potentially negative impact of the Sterlings' proposal on the priority administrative claims from the chapter 11 phase of the case. Thus, although there may be no recovery for unsecured creditors, we are strongly persuaded that the trustee was not acting only for her own benefit. Cf. In re KVN Corp., 514 B.R. 1 (9th Cir. BAP 2014).

In short, the bankruptcy court considered the Sterlings' objection. But it concluded that BOTW's compromise was in the

18

bankruptcy estate's best interest even if it did not result in a recovery for unsecured creditors. Given the circumstances of this case, this was not clearly erroneous.

In sum, the first, third, and fourth A & C Properties factors weighed in favor of the Trustee's compromise — and the Sterlings on appeal do not even question the bankruptcy court's findings on the first and third factors; the second factor was neutral. And no one factor is dispositive; the "factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." Greif & Co. v. Shapiro (In re Western Funding Inc.), 550 B.R. 841, 851 (9th Cir. BAP 2016). Accordingly, the bankruptcy court did not abuse its discretion in approving the settlement.

**CONCLUSION**

Based on the foregoing, we AFFIRM.