**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HOMESITE HOLDINGS LLC,<br><div align="right">Debtor.</div> | BAP Nos. SC-24-1034-BGC<br>SC-24-1035-BGC<br>(Related Appeals) |
| HOMESITE HOLDINGS LLC; MICHAEL R. CARTWRIGHT, II,<br><div align="center">Appellants,</div><br>v.<br>RONALD E. STADTMUELLER, Chapter 7 Trustee; HOUSHANG AFRAMIAN; SMDL, LLC; T2, LLC,<br><div align="center">Appellees.</div> | Bk. No. 20-03216-MM7<br><br>Adv. No. 21-90032-MM<br><br>**MEMORANDUM***  |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Margaret M. Mann, Bankruptcy Judge, Presiding

Before: BRAND, GAN, and CORBIT, Bankruptcy Judges.

### INTRODUCTION

The bankruptcy estate in this case was comprised of real property that was encumbered by multiple liens, subject to remediation orders for landslides that had occurred on the property, and which was in danger of further erosion and landslides. After engaging in years of litigation, Ronald E. Stadtmueller

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

("Trustee"), the chapter 7[1] trustee in this case, entered into a global tripartite settlement that resolved all of the litigation issues, resulted in the transfer of the subject property to one of the creditors, and allowed for the closing of the case. The bankruptcy court approved the settlement and at the same time denied a motion for summary judgment filed by Appellants, chapter 7 debtor Homesite Holdings LLC ("Debtor") and its principal Michael R. Cartwright, II (together "Appellants"), that would have disallowed the claims of creditors SMDL, LLC ("SMDL") and T2, LLC ("T2") (together "SMDL/T2"), the proposed purchasers of the property under the global settlement.

Appellants appeal three orders in these related appeals: (1) the order granting the joint motion to settle claims between multiple parties, sell Debtor's real property to SMDL/T2, and dismiss several adversary proceedings; (2) the order denying Appellants' motion for summary judgment as to proofs of claim and the complaint filed against Debtor by SMDL/T2; and (3) an order denying Appellants' motion for reconsideration of both of the above orders. Seeing no reversible error by the bankruptcy court as to any of its rulings, we AFFIRM.

<p align="center">**FACTS**</p>

## A.    The parties

Mr. Cartwright is the manager and sole member of Debtor. In 2017, Debtor acquired vacant land known as lots 5, 6, 7, and 8 on Castellammare and

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Revello Drives in the high-end community of Pacific Palisades near Los Angeles ("Property"). The Property was Debtor's sole asset. Various owners have tried to develop the Property since the 1990s without success; Debtor made no changes to it since taking ownership in 2017.

Unsecured creditors SMDL/T2 own properties which adjoin and are uphill from the Property. The ascending slope between the parties' properties is steep and near vertical in places. SMDL/T2's properties receive lateral and subjacent support from the Property.

Houshang Aframian held a senior lien on the Property for $1.275 million and filed a proof of claim for that amount. Appellants' objection to the claim was consolidated with Trustee's adversary proceeding against Mr. Aframian, which sought disallowance of his claim and cancellation of his senior lien. Big A Rancho Santa Fe, LLC ("Big A") held a $2 million junior lien on the Property. In a settlement with Trustee, Big A agreed to reduce its lien to $21,000 plus interest.

## B.    Relevant prepetition events

In 2002, in an attempted development of the Property, retaining walls were constructed along some of the lots. In 2005, a landslide occurred on the parties' properties. The City of Los Angeles ("City") issued stop work orders and orders to comply, requiring the owners to correct the slope failure. In 2006, the City recorded Certificates of Substandard Property against the properties based on a "Class I Slope Failure." Debtor's predecessor unsuccessfully litigated with the City over the certificate. The landslide on

3

Debtor's Property has continued unabated since 2005. It is unknown what has been done since 2005 on SMDL/T2's properties.

In 2009, the City approved a plan to repair the hillside, but the plan was never completed. In 2014, the California Coastal Commission ("Commission") approved proposed construction of new retaining walls on the parties' properties to stabilize the hill, but the new walls were never constructed.

## C.    The bankruptcy case

After exhausting all state court efforts to stop a foreclosure by Mr. Aframian, Debtor filed a chapter 7 bankruptcy case on June 25, 2020. Trustee was appointed as the chapter 7 trustee.

SMDL/T2 filed unsecured proofs of claim for $3 million each. They asserted that Debtor was liable for damages caused to their properties by illegal and reckless grading activity on the Property from 2000-2002, which caused the 2005 landslide and the deteriorating and unstable condition of the hillside. SMDL/T2 asserted that Debtor was obligated to restore the lateral and subjacent support for their properties and that such repairs could not be completed until the landslide condition on Debtor's Property, which they contended was a continuing nuisance, was repaired.

Appellants objected to SMDL/T2's proofs of claim. Thereafter, SMDL/T2 filed an adversary complaint for declaratory judgment that Debtor had a statutory duty to provide lateral and subjacent support to SMDL/T2's uphill properties and that Debtor's Property could not be sold free and clear of that obligation. The bankruptcy court consolidated the claim objection and the

4

adversary since they involved common questions of law and fact, and both matters proceeded in the adversary proceeding.

### 1. Summary judgment in the adversary

Appellants moved for summary judgment as to SMDL/T2's proofs of claim and request for declaratory relief ("MSJ"). Appellants' expert opined that Debtor's retaining walls actually stabilized, not caused, the 2005 landslide. He maintained that SMDL/T2's actions, namely improper drainage pipes on their properties, caused the 2005 landslide. However, even if work performed on the Property was the cause, Appellants argued that Debtor was not liable for damage caused by prior owners. And, even if Debtor was liable, argued Appellants, SMDL/T2's claims for a permanent nuisance accrued in 2005 and were barred by the three-year statute of limitations. Alternatively, if SMDL/T2 could prove that the conditions on Debtor's Property were a "continuing" nuisance, which could give rise to successive actions for damages each with a three-year time bar, Appellants argued that SMDL/T2 failed to provide evidence of damages that occurred within the three years prior to their complaint.

In opposition, SMDL/T2 argued that Appellants' expert's opinion as to the cause of the 2005 landslide was controverted by the City's conclusion that it was caused by the construction of the retaining walls based on faulty geological plans. SMDL/T2's expert disputed Appellants' expert's "drainage pipes" causation theory and maintained that an active landslide existed on the Property, which was evidenced by winter storms in 2023 that caused debris to

5

push through the lower retaining wall and spill out onto the street.

SMDL/T2 argued that Appellants' position that Debtor had no successor liability for the prior owner's excavation for the retaining walls was incorrect. Rather, their claims were based on damage caused by construction of the unfinished and unreasonably dangerous retaining walls still existing when Debtor acquired the Property and Debtor's failure to remediate the dangerous artificial condition. SMDL/T2 argued that the dangerous condition caused by the unapproved and unfinished retaining walls, and the ongoing landslide that was overtaking them, was a continuing nuisance that could be abated by stabilizing the hillside. Estimates for hillside repairs, which might require removal or enhancement of the retaining walls, ranged from $2.7 to $3.8 million.[2]

In reply, Appellants argued that if the walls were a continuing nuisance, SMDL/T2's estimated repair of $3.8 million was unreasonably high compared to the Property's value, which Appellants contended was between $2.35 and $3.8 million. Consequently, argued Appellants, the high remediation costs to value rendered the nuisance permanent, not continuing, barring SMDL/T2's claims.

### 2.   The settlement and sale motion

Before the bankruptcy court ruled on the MSJ, Trustee, SMDL/T2, and Mr. Aframian filed a joint motion for approval of a settlement and release of

---

[2] Although SMDL/T2 obtained a repair bid in 2020 for $858,000, which Appellants raised, the engineer's plans for that bid were incorrect and the City would not approve it.

claims between them and a sale of the Property to SMDL/T2 ("Settlement and Sale Motion"). The settlement terms of the agreement ("Agreement") are summarized as follows:

- SMDL/T2 would withdraw their $3 million proofs of claim and Appellants' objections to those claims would be deemed withdrawn;

- SMDL/T2 would waive repayment of their administrative claim for $150,000, which they provided to Trustee to fund his investigation of Big A's liens; to date, SMDL/T2 had provided $141,141 of that $150,000;

- SMDL/T2 would dismiss their adversary proceeding against Debtor and agree with Trustee to a mutual general release of all claims;

- Mr. Aframian would reduce his $1.275 million senior lien on the Property to $150,000, release his lien upon payment at the sale, and withdraw his proof of claim;

- Trustee would dismiss the adversary proceeding against Mr. Aframian and agree to a mutual general release of all claims, and SMDL/T2 and Mr. Aframian would agree to a mutual general release of all claims;

- Big A's lien on the Property, which had been reduced to $21,300 plus interest, would be satisfied upon the sale to SMDL/T2.

As for the sale terms of the Agreement, Trustee would convey the Property to SMDL/T2 subject to all liens, interests, and encumbrances, except the Aframian and Big A liens to be paid by SMDL/T2 through escrow. SMDL/T2 would also satisfy the approximate $200,000 delinquent property tax claims. Hence, under the Agreement, Trustee would receive a total of $338,505.40.

In evaluating the settlement under *A & C Properties*, Trustee argued that the settlement between SMDL/T2 and the estate, Mr. Aframian and the estate,

7

and SMDL/T2 and Mr. Aframian was fair and equitable, negotiated in good faith, and in the best interest of creditors and the estate. In short, Trustee argued that the tripartite settlement resolved all matters, disposed of the distressed Property, and allowed him to finally close the case without further expense and uncertainty of protracted litigation and potential appeals.

Trustee asserted that the outcome of the pending litigation between him and the various parties was uncertain. If the Agreement was not approved, he believed that the SMDL/T2 matter would continue to be heavily litigated, especially given Mr. Cartwright's propensity to litigate, and was likely resolvable only through the use of expert witnesses which the insolvent estate could not afford. Trustee argued that settlement with SMDL/T2 would avoid trial and the cost, delay, and risk of complex litigation. The settlement with Mr. Aframian also avoided trial and its related cost, delay, and risk. The settlement additionally provided cash to the estate, payment of Big A's allowed lien, and payment of the long-outstanding property taxes. Trustee argued that settlement was in the best interest of Debtor, its creditors, its estate, and the public; all creditors' claims would be resolved through payment or otherwise and a public hazard would finally be addressed.

Regarding the sale of the Property to SMDL/T2 under § 363(b), Trustee asserted that it was negotiated at arm's length and in good faith, was in the best interest of estate, was fair and reasonable, and should be approved based on his sound business judgment. While Trustee did not put a value on the Property, he did not believe it was worth as much as Mr. Cartwright asserted.

8

Trustee explained that a broker tried to sell the Property but those efforts failed. Trustee said he learned that the Property was borderline valueless because it was fraught with many legal and practical problems as evidenced by the failed sale attempt and preliminary title report. Trustee argued that due to the complex issues related to the Property, it was impossible to establish overbid terms that would equate to the value of the Agreement. Trustee requested a finding under § 363(m) that SMDL/T2 were good faith purchasers.

Appellants opposed the Settlement and Sale Motion. They argued that Trustee presented no analysis regarding the probability of success of the SMDL/T2 litigation. Appellants continued to challenge the claims as baseless, for the same reasons asserted in their MSJ. Appellants also challenged Trustee's concerns about the expense of litigation, noting that Mr. Cartwright had been paying for the SMDL/T2 and Aframian litigation and that he could continue to do so through trial.

Appellants further argued that Trustee failed to show he was getting optimal value for the Property. Although he stated that his broker's efforts to sell the Property had failed, he did not provide any details about what those efforts were or provide a declaration from the broker explaining why he was unable to sell the Property, which was in a highly desirable oceanfront neighborhood. Appellants asserted that SMDL/T2's baseless claims and litigation tainted the Property and depressed its value so that they could buy it for a grossly inadequate price, which supported the argument that they were not good faith purchasers under § 363(m).

9

In response to an unsolicited overbid submitted by another Cartwright entity,[3] SMDL/T2 disclosed that they had recently filed an emergency application with the Commission (the "September application") for a permit to repair the hillside, which included three of Debtor's four lots. SMDL/T2's expert explained in his declaration that the slope remediation plans included the drilling and placement of "soil nails" that would hold a steel "Tecco" mesh to restrain the surface soils from sliding. Although the September application the expert referenced was not filed with his declaration, SMDL/T2 corrected that error by filing it later that day.

### 3. Ruling on MSJ and Settlement and Sale Motion

The bankruptcy court denied the MSJ, ruling that triable issues of fact regarding Debtor's liability precluded summary judgment ("MSJ Order"). It was disputed as to who or what caused the unremediated landslide which was possibly still active, and whether Debtor was alternatively liable for failing to repair the retaining walls, which may or may not have been a dangerous artificial condition and may have created an exception to the general rule that a successor is not liable for removal of support. It was also disputed if Debtor was liable for nuisance, whether permanent or continuing, which was key to the applicability of the three-year statute of limitations. The court found that abatement costs of $2.7 million could be found to be reasonable at trial given

---

[3] Although the Agreement was not subject to overbids, CTPC, LLC submitted one. Ultimately, the bankruptcy court rejected the overbid in favor of the Agreement. This is not challenged on appeal, but we discuss it as it relates to the reconsideration motion.

Mr. Cartwright's valuation of the Property at $3.8 million, which could support a continuing nuisance theory.

Next, the bankruptcy court approved the Settlement and Sale Motion ("Settlement and Sale Order"). Applying the four factors under *A & C Properties*, the court found that the settlement part of the Agreement was reasonable, fair, and equitable. Though Trustee had not separately evaluated SMDL/T2's claims and the probability of success in litigating them, the court said that its summary judgment denial accomplished a thorough evaluation of those claims and their inherent challenges. The extensive summary judgment briefing identified triable issues of fact that would depend on further testimony from key and expert witnesses to resolve. Among those issues was whether liability ran with the land, which depended on the triable issue of whether the landslide or retaining walls were a continuing nuisance. Difficulty in collection was not critical. In the court's opinion, the settlement's value was not the recovery of money, but the reduction or elimination of claims that resulted in equity for the estate. The court found that risk in the litigation with SMDL/T2 was substantial because of the disputed facts that would require expert witnesses and significant litigation to complete. Besides the high costs and delay in what was a very complex case, delay in closing the estate carried the additional risk that the landslide would be exacerbated and render the estate more administratively insolvent. Further, proceeding with litigation might not yield any better return for creditors. Finally, and what the court found most important, the settlement served the paramount interest of

creditors. It resolved all claims and had been negotiated at arm's length resulting in a fair and reasonable agreement. Further litigation put creditors at risk of receiving nothing.

The court also found that Trustee's sound business judgment supported approving the sale of the Property to SMDL/T2, which liquidated the estate's sole asset that was subject to landslide risks and extricated the estate from litigation. The court did not fault Trustee for not stating a value for the Property. In denying the MSJ, the court found that it may be worth a range of values and that its value could not be determined without resolving disputed factual issues as to the scope of the landslide, the cost to remediate, and whether or to what extent either or both parties were responsible. Put simply, determining the true value of the Property was impossible without a trial.

Finally, the court found that SMDL/T2 were good faith purchasers under § 363(m). Trustee and Mr. Weintraub, SMCL/T2's principal, attested that the sale was not the result of fraud, collusion, or coercion, but was the result of three years of litigation involving zealous advocacy on all sides and extensive arm's-length, good faith negotiations. The court rejected Appellants' argument that SMDL/T2 lacked good faith because they were pursuing baseless claims to leverage a grossly inadequate sale price; the summary judgment ruling was to the contrary. Without extensive litigation, noted the court, it was impossible to determine which party or parties were responsible for the landslide. And while SMDL/T2's claims may not be as strong as they thought, the court found that this did not affect their good faith.

## 4. Motion to reconsider

Appellants moved for reconsideration of the MSJ Order and the Settlement and Sale Order and requested a stay of both orders. They sought relief under Civil Rule 59(e) based on newly discovered evidence, and under Civil Rule 60(b)(3) based on SMDL/T2's alleged fraud.

Appellants asserted that they were entitled to relief based on their discovery of an undisclosed application SMDL/T2 submitted to the Commission in October 2023 (the "October application"). The October application proposed a completely different repair system from the September application submitted to the bankruptcy court. Appellants' expert opined that the soil nails/Tecco mesh repair identified in the October application would not be possible if, as SMDL/T2 contended, the retaining walls on Debtor's Property were defective, unstable, or were a contributory cause of the 2005 landslide. And it was these supposed defects and instability in the retaining walls, argued Appellants, that SMDL/T2 claimed were an unreasonably dangerous artificial condition, thus allowing them to avoid the successor liability rule, the three-year statute of limitations for a permanent nuisance, and summary judgment. In short, argued Appellants, the October application showed that SMDL/T2 now admitted that Debtor's retaining walls were not a dangerous condition but actually provided stability for their latest proposed repair for the slope failure.

Appellants argued that the October application constituted "new evidence" because it was not discovered until after the hearing where the court

13

announced that it was approving the Settlement and Sale Motion and denying the MSJ. Appellants argued that SMDL/T2 concealed the October application and should have disclosed it in discovery. Instead, Appellants had to learn about it by contacting the Commission.

Appellants also argued that SMDL/T2 had engaged in fraud and misconduct by misrepresenting to the court, Trustee, and all parties that they were relying on the September application for their repair plans, when they were really relying on the October application which flatly contradicted any notion that Debtor's retaining walls were defective or unstable. Appellants argued that the concealment of this information appeared to be deliberate because the plans attached to the October application were dated September 2022 – one year before the October application was submitted to the Commission.

In opposition, SMDL/T2 argued that Appellants did not establish that failure to disclose the October application was fraudulent and further that the information it contained was available prior to the hearing on the MSJ and the Settlement and Sale Motion. SMDL/T2's expert disclosed the soil nails/Tecco mesh repair proposed in the October application in their response to CTPC's overbid in advance of the hearing. Unfortunately, the September application was mistakenly referenced and filed with the court, but SMDL/T2 argued that this was a mistake rather than "fraud." In any case, their expert disagreed with Appellants' expert. SMDL/T2's expert asserted that the proposed repair method of soil nails/Tecco mesh did not depend upon the condition of the

14

retaining walls. Therefore, they argued, the factual issues regarding whether the soil nails/Tecco mesh repair could be used if Debtor's retaining walls were defective or unstable were disputed and would not change the outcome for Appellants.

### 5. Ruling on reconsideration

The bankruptcy court denied reconsideration of the MSJ Order and the Settlement and Sale Order and Appellants' request for a stay. Ruling under Civil Rule 59(e), the court rejected Appellants' argument that the October application, which proposed the repair of soil nails/Tecco mesh, was "newly discovered evidence." It was available to them by inquiry to the Commission before the hearing and the court's final ruling, but neither Appellants nor their expert thought to look for it. Further, even if SMDL/T2 could be faulted for failing to supplement their discovery responses with the October application, the court observed that the case had progressed well beyond the discovery stage.

However, and what the court found crucial, the October application only confirmed its reasons for entering the MSJ Order and Settlement and Sale Order in the first place. SMDL/T2's expert's opinion had not changed, and Appellants did not "prove" that only SMDL/T2 were responsible for the slope instability. The court found that even if the October application had been part of the record when it ruled on the MSJ, it still would have held that a trial was necessary. Consequently, relief from the orders was not warranted.

Appellants timely appealed. They sought a stay of the pending appeals

15

from the BAP, which was denied. SMDL/T2 moved to dismiss the appeals as moot. As we explain below, the motion is DENIED.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N) and (O). Subject to our discussion of standing and mootness below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.     Do Appellants have standing to challenge the orders on appeal?

2.     Are the appeals moot?

3.     Did the bankruptcy court clearly err in finding that SMDL/T2 were good faith purchasers under § 363(m)?

4.     Did the bankruptcy court err in denying the MSJ or abuse its discretion in granting the Settlement and Sale Motion?

5.     Did the bankruptcy court abuse its discretion in denying reconsideration of the MSJ Order and the Settlement and Sale Order?

## STANDARDS OF REVIEW

While standing to appeal is generally a legal issue we review de novo, whether an appellant is a "person aggrieved" by the order appealed is a question of fact we review in the first instance. *See Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011). Mootness is a question of law reviewed de novo. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

We review de novo the bankruptcy court's grant or denial of summary

16

judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014).

We review a § 363(m) "good faith" finding for clear error. *Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (9th Cir. BAP 2002). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010).

We review § 363 sale orders for an abuse of discretion. *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald),* 428 B.R. 872, 880 (9th Cir. BAP 2010). And we likewise review the bankruptcy court's approval of a settlement for an abuse of discretion. *Martin v. Kane (In re A & C Props.),* 784 F.2d 1377, 1380 (9th Cir. 1986).

We review orders denying reconsideration for an abuse of discretion, whether the motion for reconsideration is based on Civil Rule 59(e) or Civil Rule 60(b). *Sch. Dist. No. 1J v. AC&S, Inc.,* 5 F.3d 1255, 1262 (9th Cir. 1993).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or not supported by the record. *United States v. Hinkson,* 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.  Appellants have standing.

An appellant of a bankruptcy court order must establish both Article III standing and that it is aggrieved by the order. *Clifton Cap. Grp., LLC v. Sharp (In re E. Coast Foods, Inc.),* 80 F.4th 901, 905 (9th Cir. 2023), *as amended* (citing

*Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983)). Article III or constitutional standing requires an injury in fact that is caused by or fairly traceable to some conduct and which the requested relief will likely redress. *Id.* at 906. The "person aggrieved" standard is a prudential rule of appellate standing. *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 890 F.3d 1188, 1191 (9th Cir. 2018). "[O]nly a person aggrieved, that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order, has standing to appeal that order." *Id.* (cleaned up). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *Id.* (citation omitted).

Mr. Aframian argues that Appellants lack standing because the estate is administratively insolvent. Therefore, he argues, Appellants do not meet the "person aggrieved" standard nor have they suffered a redressable injury because, as equity interest holders, they do not stand to receive distributions from the estate after payment of all claims and administrative expenses.

It is true that when an appellant's chances of receiving a distribution from the bankruptcy estate are hopeless, the appellant may lack standing to appeal orders affecting the size of the bankruptcy estate. *See Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 n.2 (9th Cir. 1999); *In re Fondiller*, 707 F.2d at 442. But Mr. Aframian presupposes that the bankruptcy court was correct in its rulings on the MSJ and the Settlement and Sale Motion. If we were to reverse the MSJ Order, thereby disallowing

18

SMDL/T2's claims totaling $6 million, as well as the Settlement and Sale Order, and accept Appellants' $3.8 million valuation for the Property as possible, then there might be a surplus upon a sale. And this could be true even if Mr. Aframian's senior lien remained at $1.275 million and property tax claims are $200,000. Notably, neither Mr. Aframian nor Trustee stated how much administrative expenses are to date. Accordingly, for these reasons, we decline to dismiss these appeals on appellate standing grounds.

## B.  Mootness

We lack jurisdiction over a moot appeal. *In re Ellis,* 523 B.R. at 677. SMDL/T2 appear to argue that the appeal of the MSJ Order is constitutionally moot, and that the appeal of the Settlement and Sale Order is both statutorily and equitably moot. "The party moving for dismissal on mootness grounds bears a heavy burden." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),* 677 F.3d 869, 880 (9th Cir. 2012) (citation omitted); *United States v. Gould (In re Gould),* 401 B.R. 415, 421 (9th Cir. BAP 2009), *aff'd,* 603 F.3d 1100 (9th Cir. 2010).

### 1.  The MSJ Order is not constitutionally moot.

An appeal becomes constitutionally moot "when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore,* 518 U.S. 149, 150 (1996) (cleaned up). The Constitution requires that "an actual controversy be extant at all stages of review." *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 160 (2016) (cleaned up). SMDL/T2 argue that the appeal of the MSJ Order is

19

constitutionally moot because the adversary proceeding was dismissed with prejudice, and so there is no longer a live case or controversy. This argument lacks merit. The MSJ was dismissed because the Agreement required it, and SMDL/T2's additional argument that the dismissal with prejudice makes it impossible for us to reverse the MSJ Order ignores the Panel's power to reverse the MSJ Order, as well as the Settlement and Sale Order, and find in favor of Appellants on SMDL/T2's claims. While dismissal might be what Appellants wanted in the adversary proceeding, which SMDL/T2 contend precludes Appellants' ability to challenge it, Appellants sought to defeat SMDL/T2's proofs of claim. Therefore, the appeal of the MSJ Order is not constitutionally moot.

**2. The Settlement and Sale Order is not statutorily moot and we decline to consider if it is equitably moot.**

SMDL/T2 argue that the appeal of the Settlement and Sale Order is statutorily moot because Appellants did not obtain a stay, the bankruptcy court found that SMDL/T2 were good faith purchasers entitled to the protections of § 363(m), and the sale has closed. We disagree.

Section 363 authorizes a trustee to sell property of the estate. Under § 363(m), when "a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 576 (9th Cir. 1998) (citing § 363(m)). But several exceptions exist to the statutory mootness rule. One exception is for appeals questioning whether the buyer purchased the property in good faith. *In re Fitzgerald,* 428 B.R. at 880 (citing *Sw.*

20

*Prods., Inc. v. Durkin (In re Sw. Prods., Inc.)*, 144 B.R. 100, 102-03 (9th Cir. BAP 1992)). Indeed, Appellants attack the good faith finding on appeal, which we address below. If we reverse on this point, we could examine the sale itself. *See Ferrari N. Am., Inc. v. Sims (In re R.B.B., Inc.)*, 211 F.3d 475, 480 (9th Cir. 2000).

SMDL/T2 additionally argue that the appeal of the Settlement and Sale Order is equitably moot because the sale has closed, money was paid, liens were released, adversary proceedings were dismissed, and the Property has been transferred from SMDL/T2 to a third party. We may dismiss an appeal if we deem it equitably moot. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33-34 (9th Cir. BAP 2008). Because we affirm the bankruptcy court's decision on the merits, we decline to reach the question of equitable mootness. *See Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 957 F.3d 990, 1002 (9th Cir. 2020) (circuit panel declining to exercise its discretion to consider if appeal was equitably moot since it was affirming the district court's ruling on the merits).

## C. The bankruptcy court did not clearly err in finding that SMDL/T2 were good faith purchasers under § 363(m).

A good faith purchaser is "one who buys in good faith and for value." *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (cleaned up). Typically, a lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Adeli v. Barclay (In re Berkeley Del. Ct., LLC)*, 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *In re Filtercorp, Inc.*, 163 F.3d at 577). The relevant focus of inquiry is good faith during the course of the sale

proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

The bankruptcy court found that the sale of the Property to SMDL/T2 was not the result of fraud, collusion, or coercion, but was the result of three years of litigation involving zealous advocacy on all sides and extensive arm's-length, good faith negotiations. These findings were supported by declarations from Trustee and SMDL/T2's principal, Mr. Weintraub.

Appellants argue that the bankruptcy court erred in finding that SMDL/T2 were good faith purchasers because the sale process was tainted. Specifically, they contend SMDL/T2 sabotaged the marketing and sale process by filing baseless claims and litigation against Debtor and claiming that Debtor was liable for the alleged removal of lateral or subjacent support for SMDL/T2's properties by a previous owner. Appellants argue that SMDL/T2's unsupported claims were used to leverage a grossly inadequate sales price.

The bankruptcy court rejected these arguments, finding that its denial of summary judgment for Appellants demonstrated that SMDL/T2's claims against Debtor were neither baseless nor unsupported. Precisely, the court found that, while SMDL/T2's claims might not be as strong as they thought, this did not affect their good faith.

Further, successor liability based on the removal of lateral or subjacent support was not SMDL/T2's only theory of liability. They also asserted a continuing nuisance theory based on the landslide, and argued that the retaining walls and Debtor's failure to repair them created a dangerous

22

artificial condition. Under California law, even if the defendant did not create the nuisance, it may still be liable if it knew of the nuisance and did nothing to abate it. Both the parties who maintain the nuisance and who create the nuisance are responsible for the ensuing damages. *City of L.A. v. San Pedro Boat Works*, No. CV 02-7986 ABC (JWJx), 2008 WL 11334051, at *10 (C.D. Cal. Apr. 28, 2008) (citing cases), *aff'd*, 635 F.3d 440 (9th Cir. 2011); Cal. Civ. Code § 3483.[4] In addition, under § 366 of the Restatement (Second) of Torts, Debtor as successor owner could be liable for ongoing damages if, as asserted by SMDL/T2, the retaining walls are a dangerous artificial condition.[5] For these reasons, the bankruptcy court correctly rejected Appellants' claim that SMDL/T2's claims were used to impair Trustee's ability to sell the Property and leverage a grossly inadequate sale price.

Appellants also argue that the bankruptcy court erred in finding that SMDL/T2 were good faith purchasers, because SMDL/T2 misled the court regarding the stability of Debtor's retaining walls in order to obtain a vastly discounted sale price. Appellants argue that SMDL/T2 claimed in opposition

---

[4] Cal. Civ. Code § 3483 provides: "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it."

[5] Section 366 of the Restatement (Second) of Torts provides an exception to the general rule of successor liability, when the successor owner knowingly takes possession of real property upon which an unreasonably dangerous structure or artificial condition exists, without the consent of those affected by it, and the owner has failed after a reasonable opportunity to make it safe or protect such persons against it. Appellants are incorrect that California does not recognize this exception. The court simply did not apply it in *Lee v. Takao Building Development Co.*, 175 Cal. App. 3d 565 (1985), because an artificial condition was not the basis for plaintiff's claim.

to the MSJ that Debtor's retaining walls were unstable, but then withheld from the court and Appellants the October application which presupposed the stability of the retaining walls. This is a red herring. The bankruptcy court properly rejected these arguments when Appellants raised them in their reconsideration motion. This information was available to Appellants before the hearing had they requested it, and even without the October application, SMDL/T2's expert addressed the same soil nails/Tecco mesh repair identified in the October application in his declaration in support of SMDL/T2's response to CTPC's overbid. Further, SMDL/T2's expert opined that the soil nails/Tecco mesh repair did not depend on the stability of the retaining walls. As the bankruptcy court found, the October application and dueling expert opinions simply confirmed its reasons for entering the MSJ Order and the Settlement and Sale Order in the first place.

Therefore, because Appellants did not obtain a stay, and the bankruptcy court's finding of good faith under § 363(m) is supported by the record and was not clearly erroneous, we are unable to reach the merits of the sale portion of the Settlement and Sale Order or undo the sale, which is the relief Appellants seek.

**D.**    **The bankruptcy court did not abuse its discretion in approving the settlement portion of the Settlement and Sale Motion, nor did it err in denying the MSJ.**

Rule 9019 allows the bankruptcy court to approve a compromise or settlement. The bankruptcy court has great latitude in approving a compromise or settlement under Rule 9019. *Goodwin v. Mickey Thompson Ent.*

*Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003). Even so, the compromise must be fair and equitable, in the best interests of the estate, and reasonable. *Id.* Rather than conduct an exhaustive investigation or a mini-trial on the merits of the claims sought to be compromised, the court's role is to "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Pac. Gas & Elec. Co.,* 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citations omitted); *see also Burton v. Ulrich (In re Schmitt),* 215 B.R. 417, 423 (9th Cir. BAP 1997).

In determining whether a proposed compromise is fair, reasonable, and adequate, the bankruptcy court must consider: (1) the probability of success in the litigation; (2) the difficulties, if any, of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A & C Props.,* 784 F.2d at 1381.

Despite the multifaceted settlement, Appellants contest only Trustee's settlement with SMDL/T2. They argue that the bankruptcy court erred by concluding that SMDL/T2's claims were potentially viable and they should not have been considered in the *A & C Properties* analysis. Basically, Appellants' argument is that the bankruptcy court misapplied the law on SMDL/T2's claims on summary judgment, so therefore these claims should never have

been considered for, nor a part of, any settlement.[6]

Here, the bankruptcy court amply considered the *A & C Properties* factors and did not err in applying them to ultimately determine that the settlement was reasonable, fair, and equitable and in the best interests of the estate. While Trustee did not present evidence regarding the likelihood of success on the SMDL/T2 claims, the court's thorough analysis of the claims in the context of the summary judgment motion served that purpose. The court made detailed findings as to each of the factors and those findings were not clearly erroneous. As *A & C Properties* explained, "[t]he law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." 784 F.2d at 1381 (citations omitted). We see no abuse of discretion in the court's decision respecting the compromise, and Appellants have not identified any.

Moreover, the bankruptcy court did not err in denying summary judgment. The court carefully reviewed the record and considered the parties' arguments and determined that disputed issues of material fact precluded judgment in Appellants' favor. Summary judgment may only be granted where there is no material factual dispute. *See* Civil Rule 56(a); Rule 7056; *T.W.*

---

[6] Although Appellants spend a great deal of time discussing the legal standards for a compromise under Rule 9019, much of their argument goes to the sale of the Property and their contention that insufficient evidence existed as to its value and that the bankruptcy court lacked sufficient information to determine if Trustee received "optimal value" for it. Since the bankruptcy court's § 363(m) good faith finding is supported by the record, we are precluded from reviewing the merits of the sale.

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (if the trier of fact might resolve an issue of material fact in favor of the nonmovant, summary judgment must be denied). SMDL/T2 asserted different theories of liability and each required resolution of disputed facts, which would likely only be resolvable with expert witnesses. The court did not make any real findings or legal conclusions as Appellants suggest. Such determinations could only be made after trial. We agree, and conclude that the bankruptcy court did not err in denying the MSJ.

**E.     The bankruptcy court did not abuse its discretion in denying reconsideration.**

Appellants moved for reconsideration under Civil Rules 59(e) and 60(b)(3), applicable here by Rules 9023 and 9024. The bankruptcy court ruled under only Civil Rule 59(e), presumably because the motion was filed within 14 days after entry of the MSJ Order and the Settlement and Sale Order. Ultimately, the court found that no grounds warranted reconsideration of either order.

Relief to alter or amend a judgment under Civil Rule 59(e) is appropriate if the movant demonstrates: (1) a manifest error of law or fact; (2) intervening change in the controlling law; or (3) newly discovered evidence that was not available at the time of the original hearing. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). For relief under Civil Rule 60(b)(3), the movant must prove that an order was obtained through fraud, misrepresentation, or other misconduct that prevented the movant from fully and fairly presenting its defense. Also, the fraud must not have been

27

discoverable with the exercise of due diligence. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (citations omitted).

Appellants argue that relief was warranted based on SMDL/T2's "bait and switch" with the September application and the October application, which they argue flatly contradicted any notion that Debtor's retaining walls were defective or unstable, because the soil nails/Tecco mesh repair was only possible if the walls were stable. Appellants argue that without any evidence of defects in Debtor's retaining walls, the reason for the court to refuse to grant summary judgment was eliminated, along with SMDL/T2's multi-million dollar claims.

Ruling under Civil Rule 59(e), the bankruptcy court determined that the October application was not "newly discovered evidence" because it was available to them from the Commission before the January 25 hearing on the MSJ and the Settlement and Sale Motion and the court's final ruling on February 26. Alternatively, we conclude that at least the pertinent information Appellants rely upon to make their point about the soil nails/Tecco mesh repair and the walls' stability was available to them in SMDL/T2's expert's declaration filed with SMDL/T2's response to CPTC's overbid, which was filed on January 22. While that was only three days before the hearing, this evidence was not newly discovered within the meaning of Civil Rule 59(e). *See Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (evidence in the possession of the movant before the order was rendered is not "newly discovered").

Appellants were also not entitled to relief under Civil Rule 60(b)(3), even though the bankruptcy court did not deny relief on that basis. Although SMDL/T2 should have provided the October application to Appellants, its absence did not prevent them from fully and fairly presenting their defense, because the pertinant information upon which they depend was available before the hearing and the court's ruling. In addition, although Appellants stress that the offending conduct need not be outcome determinative for relief under Civil Rule 60(b)(3) – i.e., that the movant would have prevailed had the offending conduct not occurred – the practical reality is that the information regarding the soil nails/Tecco mesh did not necessarily resolve the retaining wall issue in Appellants' favor and eliminate the need for trial, as the bankruptcy court found. SMDL/T2's expert testified that this proposed repair was not dependent upon the condition of the retaining walls. In other words, it did not prove their stability or that they were not a dangerous artificial condition.

Accordingly, the bankruptcy court did not abuse its discretion in denying reconsideration of the MSJ Order or the Settlement and Sale Order.

## CONCLUSION

For the reasons stated above, we AFFIRM.

29